## In re MEADOWS et al.

#### (Circuit Court of Appeals, Second Circuit. February 10, 1914.)

#### Nos. 16, 17.

BANKRUPTCY (§§ 223, 368*)—COMPENSATION OF REFEREE AND TRUSTEE.

Under Bankr. Act July 1, 1898, c. 541, § 40, 30 Stat. 556 (U. S. Comp. St. 1901, p. 3436), providing that referees shall receive 1 per centum of all moneys disbursed to creditors by the trustee, section 48, which prior to the amendment of 1910 (Act June 25, 1910, c. 412, § 9, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1502]) provided for specified commissions, which might be allowed to the trustee on moneys disbursed by him belonging to estates administered by him, and section 72, as added by Act Feb. 5, 1903, c. 487, § 18, 32 Stat. 800 (U. S. Comp. St. Supp. 1911, p. 1512), providing that neither the referee nor trustee shall in any form or guise receive, nor shall the court allow, any other or further compensation than that expressly authorized by that act, where a bankrupt to secure valid loans pledged negotiable stock and bonds having a market value about equal to the amount of the loan, which were sold in bankruptcy, realizing a small surplus, the trustee and referee were entitled to commissions only on the surplus after paying loan, especially where the commissions on the entire amount would have exceeded the surplus.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 571, 888–894; Dec. Dig. §§ 223, 368.*]

Petitions to Revise Order of the District Court of the United States for the Western District of New York.

In the matter of Harold G. Meadows and another, as individuals and members of the firm of Meadows, Williams & Co.; bankrupts. On petitions by William H. Hotchkiss, referee, and Edward F. Walsh, trustee, to review an order which sustained exceptions by a creditor to the trustee's final report and disallowed commissions to the trustee and referee, except so far as they were based upon moneys disbursed and realized from available assets, exclusive of the amount due to pledgees upon their securities. Order affirmed.

The opinion of the District Court is reported in 199 Fed. 304.

See, also, 181 Fed. 911.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John Lord O'Brian and Bradley Phillips, both of Buffalo, N. Y., for appellants.

Shire & Jellinek, of Buffalo, N. Y. (Vernon Cole and Edward L. Jellinek, both of Buffalo, N. Y., of counsel), for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. On August 25, 1908, the bankrupts, who had been doing business as stock and bond brokers at Buffalo, N. Y., were, on their own petition, adjudged bankrupts. It is unnecessary to enter upon a discussion of the facts or to state them in detail as there is practically no dispute regarding them.

The question is one of law and may be epitomized as follows: Where a bankrupt has borrowed money from a bank and has pledged negotiable stock and bonds for its repayment, having a market value about equal to the amount of the loan, and the pledged property is sold in bankruptcy, realizing a small surplus, are the trustee and referee entitled to commissions on the entire amount realized or only upon the surplus after paying the loan?

We are of the opinion that upon these facts the commissions should be charged only upon the amount realized by the estate. Section 72 provides:

"That neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his service than that expressly authorized and prescribed by this act."

The compensation which alone can be received by the referee and trustee is expressly provided for in sections 40 and 48 respectively. Section 40 permits a commission of 1 per centum to the referee "on all moneys disbursed to creditors by the trustee." Section 40, prior to the amendment of 1910, provided for certain commissions which may be allowed the trustee on moneys disbursed by him, belonging to an estate which he has administered. Section 2 (5) of the act provides for extra compensation where the court has authorized the trustee to conduct the business of the bankrupt for a limited period, but this was not done in the case at bar. The result of the sale of the securities was of no benefit financially to the general creditors, if the appellants' position be correct, for the amounts allowed by the referee to himself and to the trustee more than absorbed the small surplus realized at the sale. The total amount of the liens was $366,807.68. The total amount received from the purchaser was $371,485.55, so that the amount of the equity of redemption, which was the only interest the creditors had in the securities was $4,677.87. The amounts allowed by the referee aggregate $5,807.64, so that the general creditors are worse off by $1,129.77 than they would have been if the banks had sold the securities. The suggestion that the deposit of $10,670.13 in the Fidelity Trust Company to the credit of the bankrupt partnership was saved by the trustee's sale can hardly be maintained. There is no reason to suppose that the sale of the securities, if made by the banks, would not have been an honest sale and that full notice would not have been given to all interested in the securities. In short, there is nothing to

induce us to think that a sale by the pledgees would not have realized as much as the sale by the trustee.

We must not be understood as questioning the right of the trustee to sell the securities, the title to which remained in the bankrupts and passed from them to him. Realizing, however, as he must have done, that the only interest the creditors whom he represented had in the security was the equity of redemption, and being able to estimate with accuracy what that equity was, we think it doubtful whether he and the referee should have taken the course they did take, knowing that if they took the fees, which they now claim, their action would be detrimental to the interests of the general creditors. These creditors might be justified in thinking that the sale by the trustee was not for their interest, but was had for the purpose of enabling these officers to collect commissions on the entire value of the property, although the creditors had no interest except in the small equity. We do not intend to question the good faith of the referee and trustee in ordering and conducting the sale in question. We have called attention to the lack of benefit to the creditors to emphasize the improbability that Congress intended to include money paid to banks, under such circumstances as are here developed, as money disbursed to creditors by the trustee.

It is conceded that the pledges were in all respects regular and valid, the security was given by the bankrupts to the banks to secure honest loans. The only interest the creditors or the trustee had in the pledged property was in the equity of redemption. When that is ascertained, a reliable basis is found upon which commissions may be computed. The theory upon which commissions are allowed is that they shall be regulated with reference to the benefits conferred on the estate. In the case at bar no benefit was conferred upon the creditors, the amount in the hands of the trustee was not increased and no basis for extra compensation amounting to nearly $6,000 was laid. The net result of the proceeding in the bankruptcy court is that in order to collect a $4,677 equity for the general creditors $5,800 has been expended. The validity of the pledges of the property to the banks was never disputed and as most of the property had a market value, the balance due to the estate could at any time have been ascertained. The general creditors had no interest in these securities unless their value exceeded the debts for which they were pledged and yet the referee and trustee demand a percentage upon the entire amount so realized. The result of the proceeding being that the creditors would have been much better off if the pledgees had been permitted to sell the pledged property without interference. These officers not only appropriated the entire equity of redemption but collected a part of their percentages from property which otherwise would have been divided among the general creditors.

If it be once established that the bankruptcy officials can collect the percentages authorized by the two sections in question from the pledged property, irrespective of its value to the estate, it follows logically that if the property be worth far less than the debt for which it is pledged, still these officials may collect the percentages.

The order is affirmed.