KINKEAD v. J. BACON & SONS et al.

(Circuit Court of Appeals, Sixth Circuit.   March 7, 1916.)

No. 2827.

1. BANKRUPTCY ⊂═══440—REVIEW OF PROCEEDINGS—APPEAL OR PETITION TO REVISE—"PROCEEDING IN BANKRUPTCY."

Under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (Comp. St. 1913, § 9608), giving Circuit Courts of Appeals jurisdiction to superintend and revise in matters of law the proceedings of the inferior courts of bankruptcy, an order fixing the compensation of a referee involved a "proceeding in bankruptcy," and was reviewable by petition to revise, and not by appeal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⊂═══440.

For other definitions, see Words and Phrases, First and Second Series, Bankruptcy Proceeding.]

2. BANKRUPTCY ⊂═══446—REVIEW OF PROCEEDINGS—PETITION TO REVISE— SCOPE OF REVIEW.

On petition to revise an order fixing the compensation of a referee in bankruptcy, the Circuit Court of Appeals is limited to a consideration of the questions of law arising out of the facts found or conceded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⊂═══446.]

3. BANKRUPTCY ⊂═══368—FEES OF REFEREE.

Bankr. Act, § 40a (Comp. St. 1913, § 9624), provides that referees shall receive a commission of 1 per cent. on all moneys disbursed to creditors by the trustee. Held that, where a trustee continued the business of the bankrupt, using leased premises for that purpose, the rent paid by him was an expense of carrying on the business, and not a disbursement to a creditor, and the referee was not entitled to a commission thereon, though, had the trustee not continued to occupy the premises, the rent could still have been collected, and would have been a debt to the extent at least of effecting a prior lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ⊂═══368.]

4. BANKRUPTCY ⊂═══368—FEES OF REFEREE—"AMOUNT TO BE PAID TO CREDITORS."

Bankr. Act, § 40a, provides that referees shall receive a commission of 1 per cent. on all moneys disbursed to creditors by the trustee, or one-half of 1 per cent. on "the amount to be paid to creditors" upon the confirmation of a composition. Section 12b (Comp. St. 1913, § 9596) authorizes the confirmation of a composition after it has been accepted in writing by a majority in number of the creditors representing a majority in amount of the claims, and after the consideration to be paid by the bankrupt to his creditors and the money necessary to pay debts which have priority and the cost of the proceedings has been deposited in such place as shall be designated by and subject to the order of the judge. Held that, where a composition was accepted, and certain creditors, who filed an acceptance thereof reciting that the offered percentage of claims was payable in cash, also filed at the same time a waiver of the deposit by the bankrupt of such percentage so far as their claims were concerned, the amount to be paid to creditors was the full amount which creditors were to receive by virtue of the composition agreement, and the referee's commissions were to be computed on this amount, and not on the amount actually deposited by the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ⊂═══368.]

⊂═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. BANKRUPTCY ⬤⟶378—COMPOSITIONS—DEPOSITS—WAIVER.

The deposit required by Bankr. Act, § 12b, before confirmation of a composition agreement, is for the sole benefit of the creditors concerned, and they may waive the actual deposit of money or securities.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 601; Dec. Dig. ⬤⟶378.]

6. BANKRUPTCY ⬤⟶387—FEES OF REFEREE.

After the confirmation of a composition, the entry of an order releasing a bankrupt from liability to pay the specified percentage of certain claims, for the sole purpose of defeating the referee's claim to compensation, did not affect the amount of his compensation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 603–605, 607–616; Dec. Dig. ⬤⟶387.]

7. BANKRUPTCY ⬤⟶368—FEES OF REFEREE.

That claims which were being pressed for allowance at and before the acceptance of a composition offer, and were actually allowed before the composition proceedings were certified by the referee, were not allowed until after the acceptance of the composition offer, did not affect the amount of compensation to be allowed to the referee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ⬤⟶368.]

8. BANKRUPTCY ⬤⟶446—REVIEW OF PROCEEDINGS—COLLATERAL ATTACK.

On petition to revise an order fixing the compensation of a referee in bankruptcy, the refusal of the referee to permit the withdrawal of claims, after they had been voted in favor of accepting a composition offer, for the purpose of lessening to that extent the referee's compensation, would not be reviewed, where a direct review had not been asked, and it had only been brought before the court collaterally, by way of response to the referee's petition for compensation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⬤⟶446.]

9. BANKRUPTCY ⬤⟶368—FEES OF REFEREE—APPORTIONMENT.

Under Bankr. Act, § 40b (Comp. St. 1913, § 9624), providing that, when a case is transferred from one referee to another, the judge shall determine the proportion in which the fee and commissions shall be divided between the referees, the fact that moneys deposited by a bankrupt under a composition agreement were actually disbursed by the successor of a referee, whose term of office expired after the acceptance of the composition, did not entitle such successor to the full amount of the commission.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ⬤⟶368.]

10. BANKRUPTCY ⬤⟶447—REVIEW OF PROCEEDINGS—PETITION TO REVISE—SCOPE OF REVIEW.

On a petition to revise an order fixing the compensation of a referee in bankruptcy in matters of law, the appellate court could not make or direct a complete apportionment of commissions between two referees, in advance of such action by the District Court; it not appearing how completely the nonappealing referee had intended to disclaim his right to participate in further commissions, if allowed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 930; Dec. Dig. ⬤⟶447.]

Appeal and Petition for Revision from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of J. Bacon & Sons, bankrupts. On a motion by Robert C. Kinkead, former referee, for the allowance of compensation and for the apportionment thereof between him and George Du Relle, the present referee, an order was made granting the petitioner insufficient relief, and he appeals and files a petition to revise. Appeal dismissed, and order affirmed in part, and reversed and remanded in part, with directions.

H. H. Nettelroth, of Louisville, Ky., for appellant.

Wm. Marshall Bullitt, of Louisville, Ky., for appellees J. Bacon & Sons.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. [1, 2] Review of an order fixing the compensation of a referee in bankruptcy. The case is here both on appeal and on petition to revise in matter of law under section 24b of the Bankruptcy Act. In our opinion, the case involves a "proceeding in bankruptcy," and so is reviewable only under section 24b. Davidson v. Friedman (C. C. A. 6) 140 Fed. 853, 72 C. C. A. 553; Barnes v. Pampel (C. C. A. 6) 192 Fed. 525, 113 C. C. A. 81. The appeal is therefore dismissed and the case heard on the petition to revise. We are thus limited to a consideration of the questions of law arising out of the facts found or conceded. Duryea Power Co. v. Sternbergh, 218 U. S. 299, 302, 31 Sup. Ct. 25, 54 L. Ed. 1047; In re Stewart (C. C. A. 6) 179 Fed. 222, 228, 102 C. C. A. 348; In re Holden (C. C. A. 6) 203 Fed. 229, 233, 121 C. C. A. 435.

On July 13, 1914, J. Bacon & Sons, a merchandising corporation of Louisville, Ky. (one of 23 corporations controlled by or associated with the H. B. Claflin Company of New York), was adjudged bankrupt. It owed only about $50,000 of merchandise claims, but was liable on notes aggregating more than $2,300,000 held by various parties—much of the latter being paper of the H. B. Claflin Company. At the request of the general creditors, the bankrupt's business was carried on by the trustee until the confirmation of the offer of compromise later mentioned, occupying for the purpose premises under lease to the bankrupt at an annual rental of $30,600.

On March 5, 1915, about 8½ months after bankruptcy, as a result of the efforts of the note holders' committee appointed by the creditors of the 24 associated corporations (including the H. B. Claflin Company), the bankrupt offered in writing (filed with the referee) a composition "at 35 per cent. of the claims of its creditors, *allowed or to be allowed,* except those entitled to priority." [1] A meeting of the creditors of J. Bacon & Sons to consider the offer was called for March 17th. The offer was on that day accepted in writing by merchandise creditors whose claims aggregated $30,373.60, and by the note holders' committee representing notes amounting to $2,326,067.67. The offer of composition was thus accepted by a majority of creditors in both number and amount of claims.

---

[1] All italics in this opinion are ours.

The note holders' committee, by writing filed contemporaneously with its offer of acceptance of the composition, waived "the deposit to the credit of the judge * * * of the 35 per cent. composition offer made by said bankrupt, so far as said creditors' claims [so represented by the note holders' committee] are concerned." March 31, 1915, the referee certified the composition proceeding to the District Judge, further reporting the fact of deposit by the bankrupt of $30,000 only, and its refusal to make further deposit, and stating that so far as the referee was advised no reason was apparent why the composition should not be confirmed. Meanwhile, on March 22d (after the acceptance of the composition offer by the statutory majority of creditors) the note holders' committee moved to withdraw claims aggregating $512,610.20, which had already been voted by it in favor of the acceptance of the offer of composition; the referee denied the motion.

On April 24th the composition was confirmed. The referee, whose term of office had expired March 29th, then moved the court to allow his compensation under the Bankruptcy Act as claimed in his certificate of the proposition of composition, including 1 per cent. ($306) on one year's rent under the lease before mentioned, $186.55 expenses of administration (not opposed), $169.43 of miscellaneous fees (not opposed), and $4,159.35, as one-half of 1 per cent. upon $831,870.40, which was 35 per cent. of the claims of creditors.

Upon objection of the bankrupt and the note holders' committee, the court disallowed the commission claimed on confirmation of the composition, except as respects the $30,000 actually deposited with the referee (allowing to the referee's successor the entire of that commission—$150), and allowed the commission on rentals only to the amount of $27.15, being 1 per cent. of the amount of rent paid previous to the authority given the trustee to conduct the business. This review involves the propriety of the referee's charge for commissions on (a) the entire amount payable to creditors under the composition offer, and (b) one year's rentals (except to the extent on which the commission of $27.15 was allowed).

[3] The referee's claim to commission on rentals paid may be shortly disposed of. The asserted right depends upon whether the rental is to be treated as a disbursement by the trustee to a creditor of the bankrupt, and so entitling the referee to commission under section 40a of the act, or as a mere expense of carrying on the business.

We think that to the extent it was rejected by the District Judge it was clearly of the latter class. True, under the Kentucky statute the lessors had a lien upon the bankrupt's personalty upon the leased premises for one year's rent (Courtney v. Trust Co. [C. C. A. 6] 219 Fed. 57, 134 C. C. A. 595); but the trustee had nevertheless the right to the use of the premises by virtue of the lease (Courtney v. Trust Co., supra, 219 Fed. at page 67 [134 C. C. A. 595]), and so long as he paid the rent, and had such use, it is immaterial that even in the absence of such use the rent could have been collected, and would have been a prior debt to the extent at least of effecting a prior lien. The

situation after the referee's term of office expired is not materially different, for until the composition was confirmed the trustee continued to carry on the business, and after the confirmation possession was presumably restored to the lessee.

[4, 5] The referee's right to a commission upon an amount equaling 35 per cent. of the claims of creditors depends upon the construction to be given section 40a of the act, which allows referees, "as full compensation for their services," a deposit fee of $15, plus 25 cents for every proof of claim filed for allowance, and "from estates which have been administered before them one per centum commissions on all moneys disbursed to creditors by the trustee, or one-half of one per centum on the amount to be paid to creditors upon the confirmation of a composition." The District Judge held that the clause "the amount *to be paid to creditors* upon the confirmation of a composition" means only the amount actually paid the creditors out of moneys provided for that purpose *through deposit by the bankrupt.* The case turns upon the correctness or incorrectness of this construction. No authoritative decisions on this question have been cited, and we have found none.

Section 12b of the Bankruptcy Act permits the filing of application for confirmation when the composition has been accepted by a majority of creditors in number and amount, "and the consideration to be paid by the bankrupt to his creditors, and the money necessary to pay all debts which have priority and the cost of the proceedings, have been deposited in such place as shall be designated by and subject to the order of the judge." This in the ordinary case means a deposit *somewhere* sufficient to pay in full the costs of the proceedings and debts having priority (and so payable in full), together with whatever the creditors are to receive by virtue of the composition. But the "consideration to be paid by the bankrupt to his creditors" may or may not be cash. A bankrupt usually does not have enough ready money of his own to carry out a composition. The "consideration to be paid" may be the bankrupt's notes, secured or even wholly unsecured, or his mere promise to pay in the future a given amount. 2 Loveland on Bankruptcy (4th Ed.) p. 1264. It is common knowledge that compositions sometimes contemplate the taking by creditors of stock or securities under a reorganization, as in the arrangement under consideration in Re Kinnane (D. C.) 221 Fed. 762.

It is, we think, also clear that such "consideration" need not be actually deposited with the court. True, the statute requires that it "be deposited in such place as shall be designated by and subject to the order of the judge," thus plainly permitting a deposit of notes or other evidences of debt, secured or unsecured, with any approved depositary. But this deposit is for the sole benefit of the creditors concerned, and there can, we think, be no doubt of the power of such creditors to waive actual deposit of money or securities. This waiver *of deposit* was made. But a mere waiver of deposit was not a waiver of the payment by the bankrupt to the creditors of the amount agreed to be paid under the composition. On the contrary, the note holders' committee's acceptance of the composition offer (filed contemporane-

ously with the "waiver of deposit") accepted in express terms "the offer of composition at 35 per cent. to be made herein by * * * the above named bankrupt * * * and *payable in cash"*; and the waiver itself was limited to "the deposit of money necessary to apply for the confirmation of said composition." Beyond doubt the creditors in question, notwithstanding their waiver of deposit, could enforce such payment in cash by the bankrupt. The latter's discharge by virtue of the composition proceedings would destroy the remedy in bankruptcy, but not the debt for the consideration to be paid under the composition. Bankr. Act, § 14c; Zavelo v. Reeves, 227 U. S. 625, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664.

We think the meaning of the term "amount to be paid to creditors," on which the commission of one-half of 1 per cent. is to be computed, means the amount which creditors are to receive by virtue of the composition agreement. The amount offered by the bankrupt and accepted by the creditors became, upon confirmation, "the amount to be paid creditors." This construction not only seems logically to result from the consideration to which we have already referred, but receives additional confirmation when consideration is given to the difference between the language "on *all moneys disbursed* to creditors by the trustee" (on which the 1 per cent. commission is to be computed in the case of a fully administered estate) and the *"amount to be paid to creditors,"* on which one-half of 1 per cent. is to be paid in case of composition—not requiring complete administration. The authorities [2] respecting the application of the 1 per cent. commission, which relates to fully administered estates, have little pertinency here. Again, the suggestion that the amount to be paid to creditors means only the amount actually paid out by the court loses its force when it is considered that an actual disbursement or supervision of disbursement by the referee personally is not required as a condition for the allowance of either commission given by section 12b. His commission would be the same were that disbursing supervision performed by the District Judge, as it might be. See General Order in Bankruptcy No. 29 (89 Fed. xii, 32 C. C. A. xii). The statute merely makes a universal, and thus somewhat arbitrary, rule for payment of compensation. The construction we have put upon section 40a breeds no conflict with section 72 of the act, which forbids the referee to receive or be allowed "in any form or guise" any compensation except that expressly authorized and prescribed by the act. We think the commission as here applied is expressly authorized and prescribed by the act. It is notorious that in many cases the statutory fees for specific items of service furnish inadequate compensation for the entire administrative work involved. The commissions cover all work whose compensation is not specifically provided for. This case well illustrates such fact; for it appears that the referee has done a large

[2] Bray v. Johnson et al. (C. C. A. 4) 166 Fed. 57, 91 C. C. A. 643; In re Columbia Cotton Oil Etc. Co. (C. C. A. 4) 210 Fed. 824, 127 C. C. A. 374; In re Meadows (C. C. A. 2) 211 Fed. 948, 128 C. C. A. 446; In re Breakwater Co.'s Estate (C. C. A. 3) 224 Fed. 333, 140 C. C. A. 19.

amount of work, for which the statutory fees ($196.58), independently of the commission in question, afford but trifling compensation.[3]

[6, 7] We are·therefore of opinion that the referee was entitled to a commission of one-half of 1 per cent. on the amount "to be paid by the bankrupt to creditors," regardless of the fact that payment was not made directly by the bankruptcy court, and that this "amount to be paid" includes the sums to which the note holders were entitled by virtue of the composition proceedings, to bring about which they have employed the machinery of the act and the processes of the court. In reaching this conclusion we have ignored, as did the District Judge, the order entered by the note holders' committee on May 5, 1915, in terms releasing the bankrupt from all liability to pay the 35 per cent. composition offered and previously accepted. This entry was made not only after the composition was confirmed, but obviously for the. sole purpose of defeating the referee's claim to compensation. We also regard as of no moment (as apparently did the District Judge) the fact that the note holders' claims were not actually allowed until after the acceptance of the composition offer by creditors, including the note holders. The claims were being pressed for allowance at and before the acceptance of the composition offer, and were actually allowed before the composition proceedings were certified by the referee. The note holders are thus not in position to raise the point referred to.

. We may add that the record furnishes no reason to apprehend that the note holders have lost the power to get the benefit of the composition percentage. The testimony is undisputed that the chairman of the note holders' committee is president of a new corporation (formed previous to the composition proceedings) which owns the capital stock of the bankrupt. On the latter's objection the court excluded testimony offered by the referee (evidently deeming it immaterial) that the bankrupt's capital stock was so purchased by the note holders' committee at a sale of the H. B. 'Claflin Company's assets, in pursuance of a plan of reorganization under which such note holders would receive notes of the new corporation for 85 per cent. of their debt, 15 per cent. to be paid in cash, the remainder to be secured by capital stock of the bankrupt company. The referee's uncontroverted affidavit of April 26th (from which the quotation contained in the fore-

[3] The District Judge in his findings of fact treats as true (although regarding immaterial) the statement of the referee, in his report recommending composition, that, during the entire period between July 13, 1914, and March 30, 1915, when his term of office expired, he "was required to, and did, perform services as referee in said matter almost daily, with the exception of Sundays and a few days when the undersigned was absent from said district; that the aforesaid services by the undersigned, as referee, were required by reason of the fact that the conduct of the business of said bankrupt was being continued pursuant to the request of the creditors of the bankrupt; that matters were continually arising on said proceeding which required action by the undersigned, as referee; and that the undersigned, as referee, examined and countersigned approximately 6,000 checks, aggregating in amount $900,-000, which were drawn by said receiver or trustee to pay the expenses of the conduct of said business during the aforesaid period."

going footnote was taken; the affidavit having been filed, and not merely tendered) contains statements tending to the same general effect; and the referee testified upon hearing of the application for commission (also without dispute) to admissions of representatives of the bankrupt of the fact of such purchase and ownership of stock by the note holders' committee. We are not called upon, in the absence of appropriate assignments, to consider whether the excluded testimony was rightfully rejected, or whether the findings should have covered the propositions referred to. It seems enough to say that no question is raised by the record or by the opinion or findings of the district judge as to the ability of the note holders to protect themselves.

The conclusion we have reached makes it unnecessary to consider the question of "constructive disbursement" discussed by counsel.

[8] We are disposed to think the bankrupt not entitled to complain of the denial of the application of the note holders' committee for leave to withdraw the claims amounting to $512,610.20, to which we have before referred.

The request (although made before the composition proceeding was certified to the District Judge) was not presented until after the claims had been voted in favor of accepting the composition offer; the withdrawal asked was for the purpose of lessening to that extent the referee's compensation; the District Judge has not considered the question, and a direct review by the court of the referee's ruling has not been asked. The only attempt to bring it before the court was collaterally, by way of response to the referee's petition for compensation.

[9, 10] As to the apportionment between the referee and his successor: It follows from what we have said that the fact that the successor referee made the disbursement of the moneys actually deposited by the bankrupt did not entitle the successor to the full amount of the commission thereon. We are asked by petitioner to apportion on this review the entire commissions allowed between the two referees. How completely the successor has intended to disclaim the right to participate in further commission, if allowed, is not entirely clear. As we are not considering the case on appeal, but merely upon revision in matters of law, we cannot on this review make or direct such complete apportionment. We assume that the District Judge will determine the apportionment under section 40b of the act, taking into account the proportionate labor and service performed by the two referees in the administration of the estate, in case the successor claims any interest in the further commission.

The order complained of will be affirmed so far as concerns the commission upon rentals, and reversed as respects the commission under section 40a, and the record remanded to the District Court with directions to allow the referee's commissions upon the basis prescribed herein, and to take further proceedings not inconsistent with this opinion. The petitioner will recover his costs of this court.