## In re KINNANE CO.'S ESTATE.

## In re FRED BUTTERFIELD & CO., Inc., et al.

### (Circuit Court of Appeals, Sixth Circuit. June 5, 1917.)

### Nos. 2981, 2988.

**1. BANKRUPTCY ⊂⊃440—REVIEW—MODE OF REVIEW.**

Bankruptcy Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (Comp. St. 1916, § 9608), giving Circuit Courts of Appeals jurisdiction to superintend and revise in matters of law proceedings of the inferior courts of bankruptcy, provides the applicable method of review of orders affirming orders of the referee denying applications for allowances of counsel fees for services in connection with a proposed composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915.]

**2. BANKRUPTCY ⊂⊃444—PROCEEDINGS TO REVISE—TIME.**

In the absence of a rule in the Sixth circuit governing the matter, proceedings to revise orders of the bankruptcy court, docketed four and six months after such orders were entered, will not be dismissed, especially where the original record was long, the finding of facts naturally took considerable time, and no appeal was thereby delayed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 920–927.]

**3. BANKRUPTCY ⊂⊃446—PROCEEDINGS TO REVISE—REVIEW.**

On a petition to revise, the court cannot review the District Court's finding that a payment by the bankrupt to its counsel was ample remuneration for services of counsel in performing the duties imposed on the bankrupt, for which compensation is expressly authorized by section 64b(3) of the Bankruptcy Act (Comp. St. 1916, § 9648).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929.]

**4. BANKRUPTCY ⊂⊃482(3)—COUNSEL FEES—BANKRUPT'S ATTORNEYS.**

The services of a bankrupt corporation's counsel in presenting and urging the acceptance of offered compositions had no relation to the duties imposed on the bankrupt by Bankruptcy Act, § 7 (Comp. St. 1916, § 9591), and for which an allowance is authorized by section 64b(3) of the act (section 9648), and no allowance of fees therefor is authorized.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

**5. BANKRUPTCY ⊂⊃482(3)—COUNSEL FEES—BANKRUPT'S ATTORNEYS.**

Where a composition was offered before an adjudication in bankruptcy, and the bankrupt resisted the appointment of a receiver and remained in control of its business, no allowance for the services of the bankrupt's counsel in advising the bankrupt regarding its business between the filing of the petition and the adjudication was authorized under section 64b(1) of the Bankruptcy Act (Comp. St. 1916, § 9648), specifying as one of the debts entitled to priority the actual and necessary cost of preserving the estate subsequent to filing the petition, especially as provision for such a case is made by section 12a, as amended by Act June 25, 1910, c. 412, § 5 (Comp. St. 1916, § 9596), providing that, in compositions before adjudication, the court shall call a meeting of creditors for the allowance of claims, examination of the bankrupt, "and preservation and conduct of estates."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

**6. BANKRUPTCY ⊂⊃482(3)—COUNSEL FEES—RIGHTS OF CREDITORS.**

Where it was not clear that creditors would have received less if the second composition offer had been accepted, an allowance of counsel fees for opposing the composition was properly denied, and the fact that the second offer was the result of opposition to an earlier offer was not

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ground for adopting the first offer as an inflexible basis of determining the ultimate benefit to the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

7. BANKRUPTCY ⬤�longrightarrow482(3)—COUNSEL FEES—RIGHTS OF CREDITORS—"ACTUAL AND NECESSARY COST OF PRESERVING THE ESTATE."

The expense of opposing an offer of composition before adjudication is not an "actual and necessary cost of preserving the estate," within Bankruptcy Act, § 64b(1), and no allowance of counsel fees for opposing it is authorized by that section.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

8. BANKRUPTCY ⬤⟶482(3)—COUNSEL FEES—RIGHTS OF CREDITORS.

The bankruptcy court cannot, under its general equity powers, make an allowance of counsel fees to creditors successfully opposing a composition offered before adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

9. BANKRUPTCY ⬤⟶482(3)—COUNSEL FEES—RIGHTS OF CREDITORS.

That the petitioning creditors in an involuntary proceeding, in which a composition was offered before adjudication, favored the composition and did not press their petition for adjudication, and that creditors successfully opposing the composition, by so doing, contributed to bringing about the hearing on the original petition, did not make them petitioning creditors, so as to entitle them to an allowance of counsel fees under Bankruptcy Act, § 64b(3), authorizing the allowance of an attorney's fee to the petitioning creditors in involuntary cases.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

Petitions to Revise Orders of the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

In the matter of the estate of the Kinnane Company, bankrupt. On petition by the bankrupt to revise an order affirming an order of the referee denying an allowance of counsel fees, and on petition by Fred Butterfield & Co., Incorporated, and others, to revise an order affirming an order denying an allowance to it. Affirmed.

See, also, 217 Fed. 488; 221 Fed. 762.

In Case No. 2981:

Gilbert Bettman, of Cincinnati, Ohio, for petitioner.

F. A. Johnston and Keifer & Keifer, all of Springfield, Ohio, for respondents.

In Case No. 2988:

Sidney G. Stricker, of Cincinnati, Ohio, and Selden Bacon, of New York City, for petitioners.

Keifer & Keifer and F. A. Johnston, all of Springfield, Ohio, for respondent.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. On June 17, 1914, involuntary proceedings in bankruptcy were begun against the Kinnane Company, a merchandising corporation at Springfield, Ohio, and on the same day a petition for the appointment of a receiver was filed. On or about July 6th following the alleged bankrupt made an offer of composition under section 12 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 549 [Comp. St. 1916, § 9596]), which was referred to the referee for proceedings thereunder and report thereon. Pending this reference

a new offer of composition was made of 40 per cent. in cash, 5 per cent. in two equal payments at 30 and 60 days, plus a third mortgage on real estate of the corporation, giving privileges of redemption at $25,-000 and $27,500, respectively, within certain periods stated. The first of the prior mortgages was for $65,000, plus some interest; the second being a proposed mortgage for $46,000 securing two Springfield banks, first, for the cash dividend payable to them, and, second, the cash required for paying other creditors. The banks also were to have other preferences in the way of pledge of the corporate stock and indorsements of two of the corporation's representatives. Certain creditors opposed the acceptance of the offer; a large majority, however, favored it, and the referee recommended its approval. The District Judge declined to confirm the composition, because of failure to give jurisdictional notice of the amended offer (217 Fed. 488), but permitted its resubmission. An appraisement of the debtor's property was had, under direction of the court. Further extended hearing was had before the referee; a large majority in number and amount of creditors voted in favor of accepting; the referee reported the facts; the District Court refused to confirm the composition as unjust, in not maintaining "the equality which the Bankruptcy Act contemplates" (221 Fed. 763); and on January 13, 1915, adjudicated the corporation a bankrupt.

The bankrupt then petitioned for the allowance of the claim of its counsel, amounting to several thousand dollars, for compensation and expenses in representing the bankrupt estate from the filing of the petition for adjudication until the adjudication was made. This application was denied by the referee, and the latter's order affirmed by the District Judge. The petition in No. 2981 is to revise that order.

One of the creditors opposing the confirmation presented a petition asking the allowance of several thousand dollars by way of compensation and expenses of counsel in resisting confirmation. This application likewise was denied by the referee, and his order affirmed by the District Judge. The proceeding in No. 2988 is to review that order.

[1, 2] 1. Section 24b of the Bankruptcy Act (Comp. St. 1916, § 9608) provides the applicable method of review.[1] The trustee moves to dismiss both petitions, as not taken within a reasonable time. The order of the District Court in No. 2981 was entered June 12, 1916; the proceeding was not docketed in this court until October 2, 1916, or nearly four months later. The order in No. 2988 was entered April 24, 1917; the notice of filing petition for review was given, and service accepted, on October 24, 1916, exactly six months after the order under review was made, and the next day after the finding of facts required by our rule 34(2) was signed, although the actual docketing occurred two days later. We treat the application as made within six months. The statute does not provide any limitation of time for bringing proceedings under section 24b. The question thus is: What is, under the circumstances, a reasonable time therefor? In some jurisdictions an

---

[1] Davidson v. Friedman (C. C. A. 6) 140 Fed. 853, 72 C. C. A. 553; Barnes v. Pampel (C. C. A. 6) 192 Fed. 525, 113 C. C. A. 81; Kinkead v. Bacon (C. C. A. 6) 230 Fed. 362, 364, 144 C. C. A. 504.

express limitation is provided by rule. This court has adopted no rule on the subject. The holdings of the different circuits as to what is or is not reasonable time are not harmonious; the periods recognized as reasonable ranging from ten days to six months. This question we have never definitely passed upon. The original record in No. 2988 was long, and the finding of facts in that case naturally took considerable time. The proceedings to revise have delayed no appeal. Under the circumstances we do not feel warranted in dismissing either proceeding.

2. The bankrupt employed counsel (a firm of attorneys) to represent it shortly before the proceedings in bankruptcy were begun; the petition for adjudication having been filed on failure of an attempt to obtain from creditors an extension of time. These counsel represented the bankrupt generally throughout the bankruptcy proceedings, including the preparation of the original and amended schedules and assistance in the other acts required of the bankrupt by law; services in the composition proceedings throughout, including the negotiation and preparation of offers, arranging for financing the same, and hearings before the referee and judge; advice to and conferences with the officers of the corporation respecting "the management of the business and keeping the company's trade alive during the unexpected opposition to the company's offer of composition," and defending the estate against an attachment suit and proceedings to enforce mechanics' and other liens on the property of the estate.

Counsel divide their services into three classes: (1) Those specifically required of the bankrupt (as under section 7 [Comp. St. 1916, § 9591]), for which compensation is specially provided by section 64b(3) Comp. St. 1916, § 9648; (2) services rendered the bankrupt in presenting and urging the acceptance of offered compositions; (3) the expense of preserving the estate under section 64b(1).

[3] As to the first class of items: Counsel had been paid by bankrupt itself $750 for services and $100 by way of expenses. The referee held the payment "ample for that portion of their services rendered in assisting the bankrupt in performing the duties imposed upon it by the act." The District Judge held that the sum paid was ample remuneration "for the services rendered, which were separate and apart from those performed in endeavoring to effect a composition from the bankrupt's creditors." There was evidence to sustain this finding, at least so far as respects the first class of services claimed for; and on this review we are bound by such determination.[2] It is clear that we cannot review the judgment of the District Court as to the first class of items.

[4] We think it also clear that the compensation claimed for services connected with the composition proceedings cannot be allowed. Services rendered in that respect have no relation to the duties of the bankrupt enumerated in section 7 and provided for by section 64b(3). Com-

---

[2] In re Stewart (C. C. A. 6) 179 Fed. 222, 228, 102 C. C. A. 348; Duryea Power Co. v. Sternbergh, 218 U. S. 299, 302, 31 Sup. Ct. 25, 54 L. Ed. 1047; In re Holden (C. C. A. 6) 203 Fed. 229, 233, 121 C. C. A. 435; Kinkead v. Bacon, supra, 230 Fed. at page 364, 144 C. C. A. 504.

position proceedings are no part of the administration of bankrupt estates; on the other hand, their object is to defeat the proposed adjudication by withdrawing the estate from the jurisdiction of the court. Upon confirmation the title to the estate revests in the bankrupt under section 70f of the act (Comp. St. 1916, § 9654). During their pendency the bankruptcy proceedings proper are in a sense suspended. In re Fogarty (C. C. A. 7) 187 Fed. 773, 109 C. C. A. 621. We are unable to distinguish this case from the Fogarty Case, in that the bankrupt there was a natural person, while here it is a corporation.

[5] The question remains whether the services of counsel in advising the bankrupt regarding its business during the period between the filing of the petition and the adjudication of bankruptcy, including legal services in opposing the attachment and lien proceedings, are within section 64b(1) of the act, as "the actual and necessary cost of preserving the estate subsequent to filing the petition." The debtor resisted the application for receiver, receivership was not ordered, and the alleged bankrupt remained in complete control of its business until the adjudication, except that shortly before that time a custodian was appointed to make purchases necessary to keep the merchandise stock in salable condition, to countersign checks for payments and make weekly reports of purchases and sales. The statement of the District Judge before quoted may perhaps be construed as holding that the payments made by the bankrupt were sufficient to cover the class of services here under consideration; but, as the bankrupt's counsel dispute that construction, we prefer not to rest our decision upon it.

In Randolph v. Scruggs, 190 U. S. 533, 539, 23 Sup. Ct. 710, 47 L. Ed. 1165, it was held that services rendered by counsel to a voluntary assignee under a state statute might be allowed in subsequent bankruptcy proceedings, so far as they benefited the estate, and that, inasmuch as the assignee would be allowed a lien on the property if he had paid the sum allowed, counsel might stand in his shoes and be preferred to that extent; and in Re Stewart, supra, we held that an assignee for the benefit of creditors who retained possession of property for some years after the filing of petition in bankruptcy against his assignor, and until final adjudication and the appointment of a trustee (no receiver having been appointed) might be treated in the settlement of his accounts as a quasi receiver, and allowed compensation for such services and disbursements as benefited the estate. Counsel seek to bring themselves within these decisions; but we think this contention carries the doctrine of those cases entirely too far. The bankrupt had not obtained possession and control of the estate through any trust or representative relation; it had personal ownership. True, it was charged with bankruptcy and insolvency, and, should the charge be sustained and the offer of composition be refused, this right of possession and management would be taken from it; and meanwhile the court had the power to take the estate into its own custody. But this it did not do, and presumably because of the pendency of composition proceedings. The claimants rendered the services we are now considering in the course of their general employment as the personal attorneys of the bankrupt. The service in question was incidental only

to their broad and general employment to protect the bankrupt in its retention and preservation of its estate, and such preservation directly worked personal benefit to the alleged bankrupt.

To permit in such case recovery from the bankrupt estate for services rendered directly to the bankrupt, and primarily for its interest and without the previous authorization of the court, from the mere fact that as the result of adjudication of bankruptcy the estate receives a benefit through its preservation, is, in our opinion, opposed to the policy of the act. Such permission would give opportunity for serious abuse in encouraging an alleged bankrupt and its counsel to undertake service in its or their discretion in the expectation (in case of adjudication) of obtaining from the estate a compensation which experience shows is apt to be more or less speculative in amount. The denial of such right need work no injustice. Where unusual efforts are required to preserve an estate pending bankruptcy proceedings, receivership is usually called for; but, even where full receivership is not demanded, a court of bankruptcy may and should exercise a quasi receivership, to the extent at least of making provision in advance for necessary services intended, in case of bankruptcy adjudication, to be made a charge against the estate. Indeed, section 12a of the Bankruptcy Act, as amended June 25, 1910 (36 Stat. 839), the applicable portion of which is cited in the margin,[3] provides a method whereby the expenses of preserving and conducting the business of an estate pending action on the composition may become part of the expenses of administration, in case composition is finally denied and adjudication made, and, impliedly at least, negatives the idea that such expenses may become part of the expenses of administering the estate where the defendant, without invoking the action of the court, in the prescribed manner, voluntarily and on its own sole motion continues the conduct of its business. In nothing we have said should we be understood as questioning the entire good faith of counsel. We think the order of the District Court denying compensation should be affirmed.

3. The principal ground on which the claim for compensation and expenses of counsel in opposing the confirmation is rested is that the rejection of the composition resulted in substantial benefit to the bankrupt estate, entitling those bringing about that result to reimbursement of expenses therein, as "the actual and necessary cost of preserving the estate" authorized by section 64b(1) of the Bankruptcy Act. Authority to so reimburse is also claimed to be found in the general equity powers of the court. The District Court found that the claim presented was exorbitant in amount, that a large part of the services and expenses charged for were wholly unnecessary, that it was at least doubtful whether the estate had been benefited by the defeating of the composition, and that no authority existed for making the reimbursement asked.

[3] "In compositions before adjudication the bankrupt shall file the required schedules, and thereupon the court shall call a meeting of creditors for the allowance of claims, examination of the bankrupt, and preservation and conduct of estates, at which meeting the judge or referee shall preside; and action upon the petition for adjudication shall be delayed until it shall be determined whether such composition shall be confirmed."

[6, 7] The composition offer first reported was in reality a second offer, differing from the first only in that it included provision for the third mortgage mentioned. Creditors have already received dividends amounting to 45 per cent., which is exactly the amount of the first offer. After bankruptcy administration, there remains in the trustee's hands, above certain future disbursements, about $15,000, which, unless further reduced (as it does not appear it will be), would pay about 10 per cent. more to unsecured creditors. It is not clear, however, that creditors would have received less if the second composition offer (the only one reported on and considered by the District Judge) had been accepted. The fact that the second offer may have been the result of opposition to the first does not, we think, justify the adoption of the first offer as an inflexible basis of determining ultimate benefit to the estate, for petitioner and its associates equally opposed the second offer, and in fact the principal contest seems to have occurred after that offer. We think the District Court justified in denying the petition to reimburse on the ground that benefit to the estate from the rejection of the composition was not clear. But, however this may be, it seems plain that the expense of opposing the offer of composition is not an "actual and necessary cost of preserving the estate," within section 64b(1), and that to so hold would violate the purpose and spirit of the Bankruptcy Act, which carefully protects the estates of bankrupts against claims by creditors and counsel, except to the extent that specific provision is made therefor in the act. This purpose is manifest throughout.

It is only by a strained and artificial construction that a successful opposition to an offer of composition can be regarded as "preserving the estate." The bankrupt has an absolute right to make an offer. The question whether it shall be accepted is largely one of policy (perhaps partly of sentiment), as to which different creditors may well entertain different views, depending in part at least upon their relations to the alleged bankrupt and its business, past or prospective, as well as their individual and immediate needs. Necessarily, there is, in the usual case, more or less uncertainty as to the ultimate financial benefit connected with the acceptance or rejection of any composition offer. Primarily the statute is intended to give to a majority of creditors in number and amount power to decide whether the composition shall be accepted. The provision requiring approval by the court seems designed for the protection, first, of the dissenting minority as against the favoring majority, and, second, of the controlling majority as against an imposition leading to their approval; but essentially and ultimately the acceptance is, so far as concerns creditors, one of policy. To allow creditors to recover from the estate for expenses incurred in the adoption of one line of policy as against another would, we think, seriously contravene the purpose of the act, and open the door to unlimited and unseemly effort and expenditure at the cost of the estate. In the Fogarty Case, supra, Judge Baker, in discussing composition proceedings, well said:

"If a contest ensues, it is between the bankrupt (and his backers) on the one side and the dissenting creditors on the other, over the question whether the estate shall remain in court to be administered or go back to the bank-

rupt. In such a contest the dissenting creditors must bear their end in paying attorney's fees. Equitably, why should not the bankrupt and his backers pay theirs?"

While this language was obiter, because not involving reimbursement to those defeating a composition, we think it applicable to the instant case. In practice, if the situation is such as to justify contests of this nature, combinations between creditors can usually afford a measurable degree of protection.

[8] The nature of the objections made naturally justified the employment of counsel for their presentation, and it is true that in the absence of a trustee creditors alone could make the contest. But these facts do not alter the distinctive nature of the contest as one between two opposing factions of creditors, nor bring the case within the statute invoked. Nor does it materially alter the case that some of the objections made to the composition offer involved charges of misrepresentation and bad faith, or that they presented facts which, if established, would forbid discharge and thus defeat composition. The argument of analogy to opposition to a discharge is, we think, sufficiently answered by what is said on that subject in the Fogarty Case. Nor do we think the court can, under its general equity powers, grant the reimbursement asked. The authorities invoked by petitioner do not sustain its contention. For example, Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, holds, so far as material here, only that one generally interested with others in a common fund who in good faith maintains the necessary litigation to save it from waste, and secure its proper application, is entitled in equity to the reimbursement of his costs, as between solicitor and client, either out of the fund itself or by proportionate contributions from those who receive the benefit of the litigation. The holdings in Randolph v. Scruggs and In re Stewart have already been referred to in an earlier paragraph of this opinion. In the Roadarmour Case, 177 Fed. 379, 381, 100 C. C. A. 611, we disclaimed an intention to hold a lack of authority in the bankruptcy court, under its general equity powers, to allow compensation to attorneys employed by creditors, under proper safeguards, to defend against the allowance of claims where the trustee refuses to make the defense. None of these cases in our opinion sustains the right of creditors to recover from the estate the expenses of a successful opposition to an offer of composition.

[9] The suggestion that the claim for reimbursement is sustainable as an attorney's fee "to the petitioning creditors in involuntary cases" under section 64b(3) of the act is without merit. Petitioner and his associates were not actually petitioning creditors, either originally or by intervention; they did not become constructively such from the mere facts that during the pendency of the composition proceedings the petitioning creditors (who were with the majority favoring the composition) did not press their petition for adjudication, and that those opposing the composition urged that the case be brought to adjudication, and finally contributed to bringing about the hearing on the original petition. Creditors who opposed the composition naturally favored ad-

judication; those favoring composition quite as naturally opposed adjudication while composition proceedings were pending.

The respective orders under review in the two cases are affirmed, with costs.

