**In re REALTY ASSOCIATES SECURITIES CORPORATION.***

**No. 183.**

Circuit Court of Appeals, Second Circuit.

Dec. 3, 1934.

[1] Summary.

*Writ of certiorari granted 55 S. Ct. 508, 79 L. Ed. ——.

Hughes, Schurman & Dwight, of New York City (Curtiss Ely Frank, of New York City, of counsel), for appellant Gross.

Krause, Hirsch & Levin, of New York City (George C. Levin, of New York City, of counsel), for appellant O'Connor.

James N. Rosenberg and Alfred T. Davison, both of New York City (Alfred T. Davison and Orrin G. Judd, both of New York City, of counsel), for appellee Realty Associates Securities Corporation.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appeals in this cause have been consolidated and will be so treated herein.

Realty Associates Corporation filed its voluntary petition in bankruptcy in the District Court for the Eastern District of New York on July 10, 1933, and was adjudicated a bankrupt on that day and the cause referred to the referee. At the same time Fred L. Gross and Frank Fox were appointed receivers. They qualified as such and conducted the business of the bankrupt until January 4, 1934, when Fox resigned. Thereafter Gross as sole receiver carried on the bankrupt's business.

The bankrupt corporation had done a large business in real estate mortgages and in installment sales contracts. It owned real estate, cash, and securities. Its debts consisted largely of bonds it had issued which were secured by three mortgages to the Manufacturers' Trust Company as trustee, although it owed other debts to the amount of $208,133.90 when its petition was filed.

It made an offer in composition which was accepted by a majority of its creditors in number and amount, but that was not confirmed, and on appeal to this court the order of the District Court was affirmed. In re Realty Associates Corporation, 69 F.(2d) 41. Thereupon the offer in composition was modified, accepted, and confirmed. The referee and the receiver, Gross, alone have appealed, and the only questions presented relate to the correctness of the order respecting their compensation and the adequacy of the order to protect the receiver from personal liability on tax claims.

The composition offer accepted and confirmed provided that

"1. All debts which have priority shall be paid in full. * * *

"3. The amount to be paid to all creditors whose claims are based on presently outstanding bonds of Realty Associates Securities Corporation, and whose claims have either been filed or allowed or are included in the schedules filed by the bankrupt (claims of such creditors to be stated as of July 10, 1933), shall be fifteen per cent (15%) of the amount of their claims as filed and allowed or if not filed and allowed then fifteen per cent (15%) of the amount at which such

claims appear in the schedule in bankruptcy filed herein. The remaining eighty-five per cent of the amount on which said fifteen per cent (15%) is computed shall be evidenced by the existing outstanding bonds as reduced and modified as hereinafter provided.

"The amounts of any coupons due prior to April 1, 1933, which are or were attached to the presently outstanding bonds of the Company shall not be included in the computation of any claim for the purposes of this composition, but such coupons shall be paid in full from the sums heretofore deposited with the respective paying agents. * * *

"5. The amount to be paid to all creditors (not entitled to priority) whose claims are not based upon presently outstanding bonds of Realty Associates Securities Corporation, shall be fifteen per cent (15%) of the amount of their claims as filed and allowed, or if not filed and allowed, then fifteen per cent (15%) of the amount at which such claims appear in the schedules in bankruptcy filed herein, and at the time of such payment such creditors shall also receive presently outstanding bonds now in the treasury of Realty Associates Securities Corporation issued under the indenture above mentioned dated October 1, 1928 (reduced and modified in the same manner as the presently outstanding bonds as provided in subdivision 4 hereof and as hereinafter provided) equal in such reduced face amount to 85% of the amount of their said claims on which said 15% payment in cash is computed."

The modification, so far as now important, of the bonds which represented 85 per cent. of the indebtedness to be paid by the bankrupt made the due date of all of them October 1, 1943, changed the rate of interest from 6 per cent. to 5 per cent. per annum, and reduced the principal to 85 per cent. of the original amount. The modified offer of composition contained detailed provisions calculated to protect the bondholders in their right to receive or enforce payment of the bonds.

The total amount of the claims covered by the offer was $13,008,038.30. The court allowed the referee one-half of 1 per cent. of the 15 per cent. of this amount which was to be paid in cash and one-half of 1 per cent. of the present value of the 85 per cent. in bonds which he found amounted together to $4,812,974.17. The referee claimed an allowance computed on the entire amount of the indebtedness, insisting that the offer in composition was to pay that in full, while the appellees claim that only the 15 per cent. in

cash was the amount to be paid on which the fee of the referee may be computed. Yet they did not appeal, and now urge the affirmance of the order on the ground that, as no greater allowance can lawfully be made in any event, the referee has not been harmed.

The compensation of referees is only what the Bankruptcy Act allows. The provision for it is found in section 40a of the act, as amended (11 USCA § 68 (a). So far as here applicable it provides:

"Sec. 40 *Compensation of Referees.* (a) Referees shall receive as full compensation for their services, payable after they are rendered, * * * one-half of 1 per centum on the amount to be paid to creditors upon the confirmation of a composition."

What is meant by "amount to be paid" is not confined to cash, but includes whatever the composition agreement provides for. Kinkead v. J. Bacon & Sons (C. C. A.) 230 F. 362. The composition agreement is a bargain which the bankrupt makes with his creditors to release his property from creditors' claims and secure his own discharge in return for the "amount to be paid" which he has offered and which has been accepted by sufficient creditors and approved by the court as the act requires. Myers v. Internat. Trust Co., 273 U. S. 380, 47 S. Ct. 372, 71 L. Ed. 692. Where the bankrupt's payment is all in cash, no difficulty can arise in computing the compensation of the referee. If property in kind should be the subject-matter of the offer in whole or in part, some means would have to be found for determining the statutory fee of the referee and whether or not that would take the form of finding the value in money of the property to be turned over to creditors and taking the proper percentage of that need not now be decided. This appeal requires a decision only on the present facts which show that we are dealing only with a situation where the amount to be paid is part cash and part in promises to pay contained in bonds of the bankrupt in terms payable in cash in the future. These bonds are in large part physically the same bonds which the creditors held before the composition, but because of the composition agreement they are to be altered in material respects by changing the principal amount, the interest rate, and the due date, they are in law new obligations enforceable only in accordance with the new promise they contain which has superseded the old one. When the holders turn them in and receive them back so altered they have their old securities no more than they would have if the old pieces of pa-

per were not returned altered by a rider attached but instead new bonds were issued in exchange for the old. So the amount to be paid in composition in so far as the payment is in bonds stands the same as to the old holders of securities and those who receive treasury bonds not previously issued.

That the debts other than those agreed to be paid by the terms of the composition are discharged by the composition is clear, Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013, In re Mirkus (C. C. A.) 289 F. 732, 31 A. L. R. 435; and it is settled that the effect of the discharge is to destroy the remedy but not the indebtedness, Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664. Yet that is only of academic interest on this appeal, for by the express terms of the accepted and confirmed composition offer the obligation of the old bonds was by agreement destroyed and supplanted by the new.

This court has held that, where a composition took place on the basis of an offer to pay 65 per cent. of the indebtedness in cash and certain creditors subsequently agreed to and did accept in lieu of the offer 15 per cent. in cash and 85 per cent. of their claims in notes of a third party, the amount actually paid was to be treated as the equivalent of the offer of 65 per cent. in cash which was taken to be the amount to be paid upon composition for the purpose of computing the compensation of the referee. In re H. Batterman Co. (C. C. A.) 231 F. 699. This shows that the amount agreed to be paid, not necessarily what is actually paid, is the amount upon which the referee's compensation is computed. To the same effect are In re Mills Tea & Butter Co. (D. C.) 235 F. 815, and Kinkead v. J. Bacon & Sons, supra. The composition, when the order of confirmation becomes final, establishes the rights of all concerned to the same effect when the composition offer includes promises of deferred payment which are not kept as when they are. In re Mirkus, supra. Nor does the compensation of the referee depend upon the fulfillment of such promises. In re H. Batterman Co., supra.

From what has been said it follows that, although the composition offer did not verbally take such form, it was in substance an offer to pay all creditors, not entitled to priority, 15 per cent. of their claims in cash and 85 per cent. of their claims by giving them new obligations for that amount payable October 1, 1943. The offer was to give the obligation of the bond, and that obligation contained the promise to pay. By making this offer and promising to pay such claims in full, the bankrupt set the amount to be paid upon composition subject only to acceptance by the necessary creditors and confirmation by the court. The effort of the court below to put a present value upon the bankrupt's promise to make the deferred payments by finding the present worth of the bonds made the compensation of the referee dependent upon whatever might be the prevailing competent opinion as to the likelihood of the bankrupt's making the future payments as agreed. This was doing by indirection what is contrary to our decision In re H. Batterman Co., supra, and making the amount of the referee's compensation contingent upon the probability of the fulfillment of the bankrupt's promises to make the deferred payments.

While it might be well by statute to give the court some discretion in fixing the compensation of a referee as was suggested in Re Columbia Cotton Oil & Provision Corporation (C. C. A.) 210 F. 824, it is impossible now to do anything but allow the arbitrary amount computed as the statute requires whether in given instances that be more or less than is reasonable. Kinkead v. J. Bacon & Sons, supra; McMillan v. U. S. Fidelity & Guaranty Co. (C. C. A.) 22 F.(2d) 155. In this instance the referee was entitled to have his compensation based on the entire amount promised to be paid.

The receivers conducted the business of the bankrupt for a time and were entitled to compensation as allowed by the court under section 48 (d, e) of the act, as amended (11 USCA § 76 (d, e). Where there is a confirmation of a composition, the compensation allowed under subdivision (d) of section 48 (11 USCA § 76 (d) may not exceed one-half of 1 per centum of the amount to be paid creditors on composition and the additional allowance under subdivision (e) of section 48, 11 USCA § 76 (e) is limited to another one-half of 1 per centum of the same amount. Unlike the compensation of a referee, that of a receiver is to be determined in the sound discretion of the court subject to the limitation stated. The compensation of the receiver who has appealed was within such limits. Although the court was in error regarding the amount to be paid on composition and did allow the receivers the maximum commissions it could, when computed according to its conception of that amount, we find no reason for believing that any greater allowance

would otherwise have, or ought to have, been made. The allowance seems to us to have been ample compensation for the services performed. Moreover, it is what the court saw fit to allow, and, as there was no abuse of discretion, the allowance should stand.

■ The remaining question on the receiver's appeal relates to his possible personal liability for taxes for 1933 and 1934. We do not know what, if any, taxes there are for the payment of which the appealing receiver may be held personally liable. The order provided for the payment of all taxes, barred all liability of the receiver for their payment, and jurisdiction was retained for the purpose, among others, of "the making of such other and further orders respecting the distribution of the consideration of the composition and the carrying out of said offer of composition, * * * as may be necessary or appropriate." So far as this record shows, no further protection is needed.

Order modified in accordance with this opinion.

AUGUSTUS N. HAND, Circuit Judge (dissenting in part).

I agree with the majority opinion as to the disposition of the appeal by Mr. Gross, but dissent from the ruling as to the commissions claimed by the referee in bankruptcy Mr. O'Connor. It seems to me that we have been referred to no authority that in any way disturbs the decision of Judge Galston as to the basis for fixing the referee's commissions and that his conclusion was inevitable because of the express terms of the Bankruptcy Act (11 USCA). It is perfectly true that referees' commissions have ordinarily been figured upon the par value of notes that have been offered by a bankrupt in a composition, but I do not find that the point that they should be valued has ever been raised, and, in the absence of an objection, it may have been quite proper to value them at the face amount where no other value was suggested.

The material portion of Bankr. Act, § 40a, as amended (11 USCA § 68 (a), which regulates referees' compensation, is the following:

"Referees shall receive as full compensation for their services * * * one-half of 1 per centum on the amount to be paid to creditors upon the confirmation of a composition."

I cannot see how "the amount to be paid to creditors upon the confirmation of a composition" means anything but the value of the property (in this case bonds of the bankrupt) which the creditors are to receive at the time when the order of confirmation is made. Any other interpretation puts form above substance and ignores reality.

Our decision in Re H. Batterman Co. (C. C. A.) 231 F. 699, is thought to be contra, but I cannot see that it is opposed to my view. In that case a composition was offered by the bankrupt corporation of 65 per cent. in cash. Some of the creditors offered to waive a deposit of cash and to take instead 15 per cent in cash furnished by H. B. Claflin Corporation and 85 per cent. in notes of another company indorsed by Claflin. We affirmed the court below in holding that the alternative offer made in consideration of the waiver of the deposit of 65 per cent. in cash was to be considered as the equivalent of the latter amount and allowed the referee commissions as though the 65 per cent. in cash had been deposited. The decision seems in accord with that of Judge Galston in the case at bar, for it involved valuing the 15 per cent. of cash and the 85 per cent. in notes at 65 per cent. in cash and calculating the commissions on the latter sum.

The decision of Judge Morton in Re Mills Tea & Butter Co. (D. C.) 235 F. 815, was to the same effect as In re Batterman Co., supra. He valued an offer of 100 per cent. in stock of a new corporation, offered as an alternative option for 25 per cent. in cash, as the equivalent of the latter, and allowed commissions to the referee on the latter sum.

Kinkead v. J. Bacon & Sons (C. C. A.) 230 F. 362, is another decision by a distinguished court thought to be contra to the ruling of the court below, but it merely held that a waiver by certain creditors of the deposit of cash to be paid on a composition would not affect the right of the referee to commissions on such sums.

There can be no doubt that the referee in receiving commissions as figured by the court below received his statutory percentage on the value of the amount "to be paid to creditors" at the time of the confirmation of the composition. This, rather than a compensation calculated on an illusory basis that has no relation to market values, seems, if not absolutely required by the statute, certainly in accordance with a just and reasonable construction of it.

In my opinion the order of the court below should be in all respects affirmed.