### In re FASHION SHOP, Inc.

#### No. 13812.

District Court, E. D. Pennsylvania.

Feb. 1, 1933.

Reargument Denied March 13, 1934.

Jacob I. Weinstein, of Philadelphia, Pa., for trustee.

DAVID W. AMRAM, Referee.

A petition for a counsel fee of $2,500 was filed by the attorney for creditors who had successfully objected to confirmation of composition.

At a meeting of creditors called for the purpose of considering this petition, among other things, objection was made on behalf of one of the creditors that the estate enjoyed no benefit from this motion, but on the contrary suffered a loss, and in a brief filed the further objection was made that the claim should have been made by the creditors and not by the attorney. Thereupon a petition was filed by the Bethlehem Textiles Company, one of the objecting creditors, to which an answer was filed by the North City Trust Company and testimony was taken thereon.

The question for decision is whether the attorney is entitled to the counsel fee under the provisions of section 64b (4) of the Bankruptcy Law as amended (11 USCA § 104 (b) (4), which provides that among debts entitled to priority of payment shall be the following: "Where the confirmation of composition terms has been refused or set aside upon the objection and through the efforts and at the expense of one or more creditors, in the discretion of the court, the reasonable expenses of such creditors in opposing such composition."

Although this section was adopted by amendment to the Bankruptcy Law in 1926, it has not been judicially interpreted except in one case, ruling that when the bankrupt withdraws his offer of composition this section of the act gave no authority for the allowance of expenses to the objecting creditors. The terms of the act provide that it becomes effective if—

(1) Confirmation of composition terms has been refused or set aside

(2) Upon the objection and

(3) Through the efforts and

(4) At the expense

(5) Of one or more creditors

(6) In the discretion of the court

(7) The reasonable expenses of such creditors in opposing such composition.

1. In order to be entitled to reimbursement of expenses the confirmation of composition terms must have been refused or set aside. If the bankrupt having made an offer of composition withdraws it, the act does not apply. In re Benjamin Herman & Co., 4 Am. Bankr. Rev. 242. If the referee has reported in favor of the composition and thereupon creditors file objections and prosecute them with effect whereby the court finally refuses confirmation, the section applies. Where the composition has been confirmed, but for reasons set forth in section 13 of the Act (11 USCA § 31) has thereafter been set aside, the section applies.

2. It is the objecting creditor or creditors who are entitled to the benefit of this section, not any other creditor who may have participated in the examination of the bankrupts or any other witnesses, or any attorney acting for such creditor.

3. Per contra if the objecting creditor does not make the necessary effort to prosecute the objections and this is done by another creditor or through an attorney for such other creditor, the objecting creditor is not entitled to the benefit of the section. The defeat of the composition must have been through the efforts of the objecting creditor.

4. The objecting creditor must have been put to expense in his successful prosecution of his objections and these expenses may be the subject of a request for reimbursement. If the creditor is put to no expense, then even though the composition is defeated upon his objection and through his efforts, he is, of course, not entitled to payment. Expense incurred by any other person than the objecting creditor is not the subject of considera-

tion under this section. Expense means money laid out, disbursed, or spent. It relates to moneys spent and not to moneys to be spent, but it may include absolute obligations which have been properly assumed by third persons.

5. The expense thus incurred, i. e. the money spent, becomes a debt due to the creditor for which he is entitled to payment in full in the order of priority fixed by this section (64) of the act. It is the objection efforts and expense of the creditor that entitle the latter to reimbursement. No other person than one falling within this category is entitled to the benefit of this section.

6. The right to reimbursement is not absolute, but it is in the discretion of the court. Presumably such discretion must, as in other cases, be reasonably and not arbitrarily exercised. What shall be the guiding principle to govern the action of the court in the exercise of this discretion? The court having ascertained the fact that the objecting creditor's efforts and expense have accomplished the result may exercise its discretion in making allowance by considering whether under the circumstances of the case the action of the successful objecting creditor has been of benefit to the estate of the bankrupt. Here the analogy of section 64b (2) as amended (11 USCA § 104 (b) (2) is invoked. This provides that: "Where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the expense of one or more creditors, the reasonable expense of such recovery." The recovery must be, not for his own or some other person's benefit, but for the benefit of the estate, i. e. all the creditors. So here, where the court in the exercise of the discretion vested in it finds that the estate has benefited by the act of the objecting creditor, it may make an allowance for reimbursement of expenses, but if, in the opinion of the court, the successful prosecution of the objection to the composition was not of benefit to the estate it may refuse to make such allowance. This it seems is what was contemplated by the use of the words, "In the discretion of the court." It may be asked how the defeat of a composition can be anything but a benefit to the estate. The composition cannot be defeated except for grounds set forth in section 12d, as follows: "(d) The judge shall confirm a composition if satisfied that (1) it is for the best interests of the creditors; (2) the bankrupt has not been guilty

of any of the acts or failed to perform any of the duties which would be a bar to his discharge; and (3) the offer and its acceptance are in good faith and have not been made or procured except as herein provided, or by any means, promises, or acts herein forbidden." 11 USCA § 30 (d).

The first of the reasons given in this section is obviously based upon a consideration by the court of what is to the best interests of creditors, to wit, what is for the benefit of the estate, and is distinguished from the other reasons given under subsections 2 and 3. The other reasons mentioned are not synonymous with the first. It follows therefore that the refusal of the composition because the bankrupt was guilty of an act which was a bar to his discharge is not necessarily for the benefit of the estate. As the word "benefit" to the estate is used in section 64b (2), it cannot mean anything other than financial benefit or advantage; the benefit is measured in cash and not in any other mode of satisfaction. It is analogous to the words "best interests of the creditors," used in section 12d (1), which has been interpreted to mean best financial interests. The fact that in section 12d (1) of the act the financial benefit to the creditor is meant, and not any other public or private "benefit" based upon so-called moral considerations or considerations of public policy, is shown by the next two clauses of that section, which specifically provide for such cases. The estate is a legal entity which has no moral or ethical character or interest. It exists merely as a means of collecting and distributing the bankrupt's assets. It has no other function. Punishment of the bankrupt for legal offenses is no business of the bankrupt estate. That may be undertaken by any one of his creditors or by the United States Attorney at the instance of the referee, receiver, or trustee as provided in section 29 (e) (1) and (2) of the act as amended (11 USCA § 52 (e) (1, 2). The Bankruptcy Act itself impliedly defines the word "estates" by setting it as a caption before section 61 of the act (11 USCA § 101). All the sections following relate to the property rights of the creditors.

A "benefit" means a financial benefit and nothing else, and if the court is of the opinion that under the circumstances of the composition and its defeat the financial interests of the creditors have not benefited, then the estate has not benefited and the court in the exercise of its discretion may refuse reimbursement of expenses to the successful creditors. They have done something which may

give them satisfaction and which may or may not be a public service, but it may not be of benefit to the estate, i. e. to the only interest for which the estate exists, to wit, its financial interest. For example, if a composition is offered by a bankrupt who has given a false statement. His composition may be defeated and his discharge may be refused. Let us suppose that the administration of his estate in bankruptcy will not pay the creditors as much as his offer of composition would have paid. Can it be said that the creditor who defeated the composition has benefited the estate of the bankrupt?

7. Assuming that the benefit of this section may be properly invoked, to what is the creditor entitled? The act states the "reasonable expenses." Here again the phrase used in section 64b (2) is used. The reasonable expenses are those properly and fairly incurred in the acts which were required to bring the matter to the attention of the court and for its decision. This would include all reasonable expenses of witnesses, taking testimony, special investigation, accountants' services, and attorneys' fees. Any proper expense incurred by the creditor would fall under this category provided it was reasonably necessary to accomplish the result. The reasonableness is a matter for judicial determination.

The question now arises whether the assumption of a legal obligation by the creditor in defeating the composition which the creditor has not paid, but for which he is liable, is an "expense" for which the estate may be taxed. For example, the creditor has engaged the services of an accountant or an attorney and has bound himself to pay a reasonable sum for his services. The composition having been defeated and the accountant's or attorney's services having contributed thereto, may the creditor ask that the accountant and attorney be paid out of the estate? Strictly and literally the obligation to pay is not an expense, yet, if honestly and fairly contracted and legally due, the claim of the third person against the creditor ought to stand in the same category as an actual outlay of money by the latter. It is true that he may not pay the accountant or attorney either because he will not or cannot, and therefore he would never have a claim against the estate for·reimbursement. Yet it seems that this is no complete answer to the problem, for the estate has enjoyed the benefit of the service of the accountant or attorney, and if on all other grounds the case is one in which the creditor would be entitled to reimbursement, the claim on behalf of the creditor's creditor should be allowed as an expense if reasonably incurred in opposing the composition.

8. Finally, the creditor opposing the composition is the only one entitled to the benefit of the section. This is set forth in the last words of the section and is also clearly the intent of the preceding parts of the same section.

These seem to the referee the principles that should govern in the interpretation of this section. The analogy of the practice in the case of objections to discharge section 14b, as amended, 11 USCA § 32 (b), proviso, may now be invoked. Where a trustee has been appointed before the offer of composition is made or pending its consideration, it should be the right and duty of the trustee in a proper case when authorized by the creditors to object to the composition. This would be done by the vote of a majority in number and amount of the creditors at a meeting called for this purpose. But where there is no trustee, as in cases where the composition is offered immediately after the filing of the petition in bankruptcy, there is no one to·act for the creditors. In such cases the section now under consideration gives the individual creditor the right to act, but his action must be a benefit to the estate. In the case of the trustee desiring to act in opposing a discharge, the majority vote of the creditors determines his right to do so. In the case of the individual creditor desiring to act, a similar rule should prevail. How is this majority vote in the latter case to be obtained? It seems that the original vote of the creditors on the composition is in itself the determining factor, for if the majority of the creditors accept the composition ipso facto, they may be presumed to be opposed to any attempt to prevent its confirmation. The fair interpretation of the section now under consideration requires the court in the exercise of its discretion to determine what was the view of the creditors as expressed by their vote in composition offer. If the majority favored the composition, can it be said that its defeat was for the benefit of the estate? And should not in that case the court, without more, refuse to reimburse the objecting creditor for his expense?

Without considering this and further aspects of the law under this section, a review of the facts in the present controversy is now in order.

The testimony may be considered under the separate heads above outlined in an analysis of the section of the act:

(1) Was the confirmation of composition terms refused or set aside? A majority of the creditors in number and amount voted in favor of the composition. After the preliminary hearing the referee was of the opinion that the composition was for the best interest of creditors and reported in favor of its confirmation. Thereupon the attorney now asking for compensation, on behalf of a number of creditors, entered his appearance against the confirmation of the composition and on behalf of one creditor, Coons & Co., filed specifications of objection. While these specifications of objection were pending, Coons & Co. went into bankruptcy, and two other creditors, to wit, Bethlehem Textiles Company, Inc., and Bower & Kaufmann, were substituted to prosecute the specifications of objection. Ultimately certain of these objections were sustained and the referee reported against confirmation of the composition, but no formal order of court refusing to confirm the composition has been entered.

(2) Was the referee's report recommending refusal of confirmation based upon the objection of the creditors? The record shows that this must be answered in the affirmative.

(3) Was the referee's report recommending refusal of confirmation based upon the efforts of the objecting creditors? The testimony relating to this phase of the matter is as follows:

The opposition to the composition was directed by Mr. Frederick G. Epp, vice president of the Philadelphia Branch of the Credit Clearing House Corporation, which had received a number of claims against the bankrupts and had been instructed that they be voted against the composition. Among these were the claims of the objecting creditors. After the referee had reported in favor of the composition, Mr. Epp consulted with the attorney to determine what should be done to prevent confirmation of the composition. Mr. Epp acted herein on behalf of the present objecting creditors, among others. These creditors authorized him to engage the services of an attorney to prosecute the objections. It was through the attorney's efforts acting for the creditors that the confirmation of the composition was refused. It is proper therefore to answer the third question in the affirmative.

(4) Was the referee's report recommending refusal of confirmation of the composition made at the expense of the objecting creditors?

The only expense incurred by the objecting creditors was the following: Coons & Co., Inc., $45.09, being 5 per cent. of their claim of $901.75; Bower & Kaufman, $28.61, being 5 per cent. of their claim of $572.26; and Bethlehem Textiles Company, $77.03, being 5 per cent. of their claim of $1,540.63. These three items amount to $150.72, and they constitute the entire expense present and prospective to which the objecting creditors were put. Other creditors, not objecting on the record to the confirmation of composition but objecting to it in fact, also contributed to the expense of the proceeding. Their claims aggregated $9,330.92, and 5 per cent. of this sum, to wit, $466.54, was the amount that they contributed. These contributions were received under the following circumstances: Mr. Epp notified all of the creditors whom his corporation represented that the confirmation of the composition should be defeated; that expense would be incurred to which they would be expected to contribute; that counsel fees would have to be paid in such amount as the work of counsel would justify. In order to secure the sum necessary, a form of assignment of claim was prepared to be signed by the creditors. The Credit Clearing House did not bind itself in any way for expenses of any kind. It merely acted as agent for the creditors. The creditors bound themselves as follows:

"In re: Fashion Shop, Inc., Philadelphia, Pennsylvania, Bankrupt

"In consideration of services rendered and to be rendered in connection with the investigation and examination made and to be made into the affairs of the said bankrupt and also in connection with the contest to be made against the confirmation of the composition settlement in the above matter, the undersigned does hereby assign to Jacob I. Weinstein, Esq., a sum equal to 5% of the undersigned's claim against the above named bankrupt out of dividend or dividends to be paid on the said claim in bankruptcy or payment in composition on the said claim.

"The said claim in the amount of $——— has been duly filed and allowed in the aforesaid proceedings.

"In witness whereof, the undersigned has hereunto set his hand and seal this ——— day of ———, 1931.

"(Name of Creditor.)"

These forms were signed by 22 creditors whose claims amounted altogether to $12,345.56. Among the signers were the three creditors above named.

538

The hearings on the specifications of objection began before the referee on May 4, 1934. At that time, the attorney had in hand an assignment of 5 per cent. of $10,024.83 of the claims, or $501.20. The balance of assignments of 5 per cent. of $2,320.73 came in after the hearings had commenced.

When Mr. Epp was asked whether the creditors had agreed to.pay the counsel fee of $2,500 asked for by the attorney, he replied that he did not know; that they did not agree to pay it through him.

Harry Weinreich, president of Coons & Co., the first objecting creditor, said that he knew that Mr. Epp had retained Mr. Weinstein; that he (Weinreich) had no talks with Mr. Weinstein personally; that he personally felt obligated to pay up to the 5 per cent.; that he did not ask any creditors to pay more; that he had gone among the creditors to obtain assistance in the fight against the composition; that he participated in securing the assignment of 5 per cent.; that he did not know whether any creditor agreed to pay more than the 5 per cent. of the claims under the assignment; and that he made no other agreement to pay except the 5 per cent. under the assignment, but he "understood" that he "might be obligated" to pay a counsel fee.

Mr. Colin Fenton, credit manager of the Bethlehem Textile Company, one of the objecting creditors, said that he discussed the matter with Mr. Epp; that he knew that Mr. Weinstein would be retained; that he knew counsel would have to be compensated and his corporation would have to pay its share. Mr. Fenton then said that his corporation agreed verbally to share in the cost of the fight in addition to the 5 per cent., but there was no definite understanding as to how many were to share and that if none were to share his corporation was to pay the entire amount. Witness stated that he was not an officer of the corporation and not able to bind it, but that he obtained the consent of the president and secretary to tell Mr. Epp he might count on the corporation to share part of the cost. The president of the corporation did not tell the witness that he might bind the corporation to pay all the expenses.

Counsel cross-examining put the matter to the witness in this form: "Is your company's position that if a fee is to be paid and is paid out of the bankruptcy estate, that is one thing and, therefore, for that matter you were not concerned, but assuming it is paid out of your own pocket, have you ever taken that up with your president as to whether this particular fee he would pay?" To which the witness replied: "No, I have not." The witness further stated that they had not assumed to pay it all, but that the president thought that the amount asked by Mr. Weinstein was "not out of proportion."

Eugene M. Kaufman, of the firm of Bower & Kaufman, another of the objecting creditors, said that he had placed the matter entirely in the hands of Mr. Epp; that he would just as leave lose the whole amount as to accept the settlement. Mr. Epp stated he would get an attorney, and later Kaufman found out it was Mr. Weinstein. He knew that he would have to bear his share of fees. His firm signed the 5 per cent. assignment and he was willing to sacrifice the whole claim of $572.26. He never was asked or agreed to pay anything more. He did not understand that he was to assume the obligation alone, but he "would say" that he was obligated beyond the 5 per cent. though he had not definitely bound himself, and had not definitely bound himself to any sum.

Jacob I. Weinstein, Esq., who is asking for the counsel fee, stated that he conferred with Mr. Epp and had some talk with Mr. Weinreich but not with the other creditors. His conversation was exclusively with Mr. Epp. When the 5 per cent. was fixed, he expected a total participation of $50,000 or $60,000 and that the 5 per cent. would produce about $2,500; but he was disappointed that only about $12,000 of claims signed the assignment. When this was discovered at about the very commencement of the proceedings, Mr. Weinstein raised the question of proceeding because the sum subscribed was inadequate.

The assignments were prepared by Mr. Weinstein and were mailed by Mr. Epp. When the inadequacy of the contributions was realized, he did not take up the question after the first time when the 5 per cent. was decided on, but Messrs. Epp and Mossessohn (a New York lawyer) communicated with creditors. No creditor obligated himself to pay the entire amount. The objecting creditors were not communicated with directly by Mr. Weinstein, nor did they directly and expressly bind themselves to him and no other creditors were bound to him. The creditors who signed the assignments are not bound for more. The objecting creditors were "impliedly" bound to pay the counsel fee.

Mr. Weinstein did not think it necessary to get an additional agreement for counsel

fee in writing because after the proceeding started he had the objecting creditors to look to. The 5 per cent. was for all the creditors. He did not think that any one creditor was going to pay all the expenses and fee, but he was going to look to a particular creditor for his compensation.

From this summary of the evidence it is clear to the referee that the fourth question must be answered in the negative. The objecting creditors were at some expense, to wit, $150.72, and for this they would be entitled to reimbursement, if this sum has not already been refunded. They were helped by other creditors, who were in no way bound, by a voluntary contribution of $466.54. Both these sums were paid to Mr. Weinstein. They were not at any expense for counsel fee, because they did not pay a counsel fee nor were they legally bound to Mr. Weinstein or to any one else to pay it. They had limited their obligation by the assignment of 5 per cent. of their claims, and while the testimony of several of the witnesses showed that they were favorably inclined toward Mr. Weinstein's request, they would not assume the position of admitting that they were legally bound to him for a fee. Mr. Weinstein admitted that he had no legal claim on any creditor for his fee, but he thought that the objecting creditors were "impliedly" bound to pay him. The referee is of the opinion that if they are bound in any way they must be legally bound, and if not legally bound they are not bound at all, so far as this proceeding is concerned. They may assume any generous position that they please toward Mr. Weinstein, but in order to be entitled to say that the proceeding was conducted at their expense they must be able to allege, either that they were put to the expense, or at least were legally bound to pay it. They can and do allege neither.

(5) The referee has considered at length the effect of the words "in the discretion of the Court," and the manner in which this discretion should be exercised. In view of the findings herein that the proceedings were not conducted "at the expense" of the creditors and that therefore the petition for counsel fee must be dismissed, it is unnecessary for the referee to express any opinion based upon the exercise of his discretionary power, nor is it necessary for him to determine whether the counsel fee of $2,500 asked for is a "reasonable expense."

And now, August 30, 1932, upon consideration of the petition of Jacob I. Weinstein filed August 4, 1931, and the petition of the Bethlehem Textile Company, Inc., filed September 23, 1931, and the answer of the North City Trust Company filed October 22, 1931, and after hearing testimony and argument of counsel and in accordance with the foregoing opinion

It is ordered that the said petitions be, and the same are hereby, dismissed.

## DICKINSON, District Judge.

The referee has returned with his certificate an opinion which includes a full and adequate discussion of the questions raised. With much of this opinion we are in full accord. It will serve, however, to clarify the situation if we briefly review it with a statement of the general principles of law applicable.

### The Fact Situation.

A composition offer was made and accepted by a majority vote of creditors and received the sanctioning approval of the referee. Incidentally, it would appear that the share of creditors in the composition fund, if the composition had been confirmed, would have exceeded the dividend of creditors in the bankruptcy assets. The composition offer was, however, not acceptable to some of the creditors. It seems that there is a concern known as the Credit Clearing House Adjustment Corporation, which offers its services to creditors generally and to the creditors in bankruptcy cases especially. Among the so-called clients of this concern were some of the creditors here. In the judgment of the officers of this concern the offered composition was not acceptable. Counsel were accordingly engaged to oppose its confirmation in the name of creditors. As a practical provision for the expense of opposing confirmation creditors were invited to agree to contribute 5 per cent. of their respective claims. About $12,000 in claims so agreed. Counsel had in the meantime been retained and specifications of objections were filed in the name of a creditor and afterwards by intervention of two others. The aggregate of the claims of these creditors was about $3,000. The opposition was successful and the offered composition was not confirmed. Counsel for the objecting creditors then filed a petition asking that he be allowed "a counsel fee of $2,-500.00 as the 'reasonable expense' of opposing the confirmation." A creditor, in whose name the objections to the confirmation had been urged, afterwards presented a like petition. To these an answer was filed by an-

other creditor objecting to the allowance. The referee dismissed the petitions, thus refusing the allowance. It is this order of refusal which we are asked to review.

## Discussion.

We may premise the discussion with some general propositions which will be accepted.

1. A creditor has the legal right to payment of the debt owing to him and the further right to refuse to compromise his claim by the acceptance of a less sum.

2. Out of consideration of the public interest, however, he may be required to surrender the exercise of the above rights to be exercised for him in the judgment of the whole body of creditors. The Bankruptcy Law does this by compelling him to accept of a composition offer which has the approval of the required majority of creditors and the sanction of the court.

3. Any creditor has the right to oppose any such composition just as he has the right, at his own expense, of defense in any litigation which concerns him.

■ This much is clear. No creditor, without a law empowering him so to do, could however impose the expense of any litigation in which he saw fit to engage upon another creditor who was unwilling and emphatically not upon one who was opposed to the litigation. There may be, however, a class of creditors, each member of which has a common share in a fund which may by effort be raised. If one of the class by his own efforts and at his own expense raises such a fund in which all share, there is room for the thought that he should contribute to the expense incurred for the common benefit in which he has part. This is somewhat akin to the principle on which salvage is allowed. In other words, he should not receive the fruit without sharing in the expense of raising it. This, however, would not impose upon him the expense of an effort which did not produce results. This thought underlies the provisions in the bankruptcy statute. All creditors have a proportional interest in a composition. Originally the trustee as the representative of creditors might act for them. This carried the consequence that the creditors bore the expense of opposing an offered composition. Willing or unwilling, they must pay it. This led to a change in the law withdrawing the power from the trustee unless authorized by the creditors to intervene. The incurring of the expense was thus committed to the judgment of the majority. Any creditor, however,

was at liberty to oppose a composition notwithstanding it was one of which the creditors as a body had approved. The expense of such opposition he must, however, himself bear. Then came the provision of the law with which we are now concerned. With the wisdom of the policy thus introduced we have nothing to do. The claim made must rest upon this law. If the law allows it, the claim must be recognized but not otherwise. The law is found in section 64 of the amended act of 1926, section (b), cl. (4), 11 USCA § 104 (b) (4). The only condition imposed is that a composition offer must have been refused as a result of the opposition of individual creditors. Here this condition has been met. The right given is to have "in the discretion of the court, the reasonable expenses of such creditors in opposing such composition" allowed as an administration expense.

■ There is no need to make our own analysis of this act, because the learned referee has made one upon which he based the order now under review. This analysis is a complete and most admirable one. The inferences drawn in giving meaning to the act have in general our concurrence. There is, however, one which is basic and which was controlling of the order made, which we cannot accept. If the principle upon which the allowance is asked were that to which we have before alluded, that the objecting creditors had raised a common fund, the expense of raising which should be borne by all who shared in it, we think the conclusion reached by the referee would follow. This, however, is not the principle upon which the allowance must be made, if at all. The basis is the narrower one expressed in the Bankruptcy Act. The only condition there imposed is, as we have said, that the confirmation of the offered composition shall have been "refused or set aside." This condition, as we have also further said, has been met. We do not think we are at liberty to add further conditions which the act does not impose. The right given, however, is, as the referee has sagely commented, not an absolute one, but is subject to the exercise of the "discretion of the Court" in its allowance. The allowance is, moreover, limited to the "reasonable expense" incurred.

■ The original petition was by counsel for the allowance of a fee to him. Clearly he is given no such right by the act. The second petition is by a creditor who objected to the confirmation of the petition. It is based, however, upon no claim to be reimbursed the "reasonable expenses" which the creditor had incurred, but solely upon the claim of coun-

sel as if he had represented and rendered services to the bankruptcy estate.

■ In making this comment we do not wish to be understood as distinguishing between an expense paid by the creditor and one incurred. Whatever question might thus arise is not before us. The petition does not ask for the allowance for "reasonable expenses" paid or incurred, but for counsel fees qua counsel fees for services, as we have said, as if rendered to the bankruptcy estate. Such claim we think was properly rejected.

The referee we think was further within his powers in exercising his discretion in allowing or refusing any allowance and in limiting any allowance made to the "reasonable expense" incurred. This "discretion" he has exercised.

We wish merely to disclaim the thought that to the condition that the opposition to confirmation of the composition must have been successful there may be added the further condition that the rejection of the composition offer has resulted in an increased dividend to creditors, before the opposing creditors may be reimbursed for the "reasonable expense" incurred. This does not mean, however, that the results of the rejection of the composition do not enter into the situation calling for the exercise of the "discretion of the Court." All we mean is that this is not controlling.

The practical result is that we approve the order of disallowance, but are not in accord with one of the reasons given for dismissing the claim.

The petition for review is dismissed, and the order made by the referee affirmed and confirmed.

### On Motion for Reargument.

A ruling in the cause was withheld awaiting paper books.

We see no need to rediscuss the question raised. The referee very fully discussed it. This court on review was in accord with the conclusions of the referee except in one particular. The referee based his refusal of the allowance of counsel fees in part upon the fact that the refusal of the compromise resulted in no increased dividend to creditors. This, as the court viewed it, was writing into the act a condition of allowance which is not there. This fact, however it might enter into the exercise of the "discretion of the Court," is not a condition of allowance. The order of the referee was affirmed, and to this we adhere.

The motion for reargument is denied.