**In re J. A. RUDY & SONS.**

District Court, W. D. Kentucky, at Paducah.
Nov. 14, 1939.

McMurry, Katterjohn & Reed and James E. Moore, all of Paducah, for trustee.

Thos. S. Waller, of Paducah, Ky., for creditor Barnes.

Okey P. Keadle, of Huntington, W. Va., for Agee Department Stores.

Steinfeld & Steinfeld, of Louisville, Ky., for petitioning creditors.

MILLER, District Judge.

The attorneys for the trustee in bankruptcy have made application for a fee of $2,000.

The attorneys for the petitioning creditors have made application for a fee of $2,000.

The attorney for L. R. Barnes, one of the large general creditors, has made application for a fee of $2,500.

Objections have been made by interested parties to all three applications on the grounds that the amount asked for in each case is excessive, and with respect to the second and third applications above referred to the services rendered are either in whole or in part not of the kind for which an allowance can be made as a charge against the bankrupt estate.

The petitioning creditors on September 8, 1937 filed an involuntary petition in bankruptcy against Kate Rudy, surviving partner of J. A. Rudy and Sons, and J. A. Rudy and Sons as a partnership. Petitioners agreed to an extension of time for answer until October 4th, 1937. The bankrupt failed to file an answer within the extended period and was adjudicated a bankrupt on October 11, 1937. John G. Russell was appointed trustee in bankruptcy on November 1, 1937 and immediately thereafter he petitioned the Court for the appointment of the firm of McMurry, Katterjohn and Reed and of James E. Moore as his attorneys. This appointment was duly made by the Court. The estate has been completely administered and all claims secured and unsecured paid in full, with the exception of accounts receivable and

still unpaid in the approximate amount of $3,000 and with one unsecured claim in the amount of $1,330.01 still unpaid because of its disallowance by the Referee, from which ruling a review has been taken which will be hereinafter disposed of. The assets have been reduced to cash and amount to $89,071.37. The trustee's accounting of this cash is as follows:

Total general claims paid...... $58,516.16
Total lien claims paid......... 14,168.82
Total costs of preservation of estate and administration
Paid ....................... 8,952.93
Total cash on hand........... 7,433.46

The allowance of fees by the Court as charges against the bankrupt estate is governed by Section 64, sub. b(1), of the Bankruptcy Act, being Section 104, sub. a(1), 11 U.S.C.A. as amended by the Act of 1938, which provides in part as follows:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * * the costs and expenses of administration * * * and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases and to the bankrupt in voluntary and involuntary cases, as the court may allow; * * *."

The payment of a fee to the attorney for the trustee, where such employment has been authorized by an order of Court, is considered as one of the expenses of administration and accordingly authorized by the foregoing section of the statute. The affidavit of the attorneys for the trustee shows that they performed the usual and ordinary duties arising in such cases, that no complicated questions arose which required an unusual amount of time or study, and that the major portion of the assets of the bankrupt estate consisted of accounts receivable which were collected largely by the trustee without the necessity of legal assistance. On the other hand, the size of the estate involved and its successful administration, paying all creditors in full, are items to be considered. Under such circumstances the Court is of the opinion that a fee of $2,000 is not unreasonable, and is accordingly allowed.

Supporting affidavits of well-known attorneys value the services at $2,500.

The affidavit of the attorneys for the petitioning creditors setting out the services rendered includes services for which no allowance can be legally made against the bankrupt estate. It is well settled as a general rule that the fee of the attorney for the petitioning creditors is restricted to services in preparing the petition, and prosecuting it to adjudication of bankruptcy. Calhoun v. Stratton, 6 Cir., 61 F.2d 302; In re Consolidated Factors Corporation, 2 Cir., 59 F.2d 193; In re Eureka Upholstering Co., Inc., 2 Cir., 48 F.2d 95. Among the services listed in the present application are services rendered in successfully resisting a composition offer of 50%, which resulted in finally securing for creditors a 100% payment, and also services in successfully resisting a claim of a creditor in the approximate amount of $25,000. In the case of In re Kinnane Company's Estate, 6 Cir., 242 F. 769, it was expressly held that services rendered in resisting a composition offer are no part of the administration of the bankrupt estate, and that no authority exists for allowing compensation for such services. The Circuit Court of Appeals for the 6th Circuit has also held in the case of In re Roadarmour, 177 F. 379, that no allowance should be made to attorneys for creditors for successfully resisting a claim against the bankrupt estate where the trustee has not refused to act. Such duty is primarily that of the trustee and his attorney, and the estate cannot be burdened with the expense of services voluntarily rendered by others who have not been employed and under circumstances where counsel appointed by the Court is available for the services in question. Other cases holding to the same effect are In re Medina Quarry Co., 2 Cir., 191 F. 815, and In re Otto-Johnson Mercantile Co., 10 Cir., 48 F.2d 741. The attorney for the petitioning creditors is entitled to have considered by the Court the time spent, the intricacy of questions involved, the size of the estate, the opposition encountered, and the results achieved, including the benefit to creditors by subjecting the estate to the jurisdiction of the bankruptcy court and thus preventing preferences and other practices which if not stopped would result in considerable damage to creditors generally. Opinion evidence touching the reasonableness of the fee, as well as the

economical spirit of the Bankruptcy Act itself, should also be considered. Calhoun v. Stratton, supra. On the other hand, such services are necessarily of short duration, being terminated by adjudication in bankruptcy and the appointment of the trustee. In the present case this period was extended by the petitioners themselves agreeing to an extension of time for answer by the bankrupt. In addition, no opposition to the adjudication developed and the order eventually went by default. Applicant cites, in support of his application, the Calhoun case, where an allowance of $2,000 was made for services covering three days and four hours. However, in that case the bankrupt estate had a cash value of more than $834,000, as compared to $89,000 in the present case. The record also discloses that the allowance requested by the attorneys was $30,000, which the Court reduced to $2,000. In the case of In re Curtis, 7 Cir., 100 F. 784, where the value of the bankrupt estate was approximately $101,000, the attorneys for the petitioning creditors were allowed $2,000 for work covering approximately a month's time. However, in that case, the adjudication was vigorously fought by the bankrupt and it was necessary to carry the question of the validity of the adjudication through the Circuit Court of Appeals. In addition, the Court expressly doubted if that be not too large a sum. In Rodgers v. Bromberg, 5 Cir., 53 F.2d 723, a fee of $3,500 to the attorneys for petitioning creditors was approved in an estate of $130,000. This involved services over a period of six months elapsing between the filing of the petition and the adjudication. On the other hand, in the case of In re Consolidated Distributors, 2 Cir., 298 F. 859, an allowance of $5,000 by the District Court was reduced to $1,500 in an estate with assets valued at between $443,000 up to $1,000,000 and with claims totaling over $2,000,000. An order has already been entered herein on April 23, 1938 by Circuit Judge Elwood Hamilton, sitting by designation, allowing the attorneys for the petitioning creditors the sum of $500 "on account". No services were performed subsequent to that time for which any allowance could be legally made. Objection has been made to any further allowance on the ground that the statute provides that the Court may allow "one reasonable attorney's fee," and that one allowance having been made no fur-

ther allowance can now be made. However, the proper construction of the statutory provision in question seems to be that the Court is restricted to allowing one fee to all of the attorneys, instead of allowing several different fees to several different attorneys. The order of April 23, 1938 making the allowance specifically makes it "on account", without any attempt to determine what the total fee should be, and I see no objection to making a finding at the present time of what the total fee should be subject to the credit of $500 already paid. This amount must necessarily be relative to the fee of $2,000 allowed the attorneys for the trustee. Taking that into consideration and the length of time during which they performed the necessary services in bringing the bankrupt estate to a successful conclusion, the limited length of time in which the attorneys for the petitioning creditors performed their services, and the restricted type of services for which they can receive an allowance, and further considering the size of the estate and the successful results which all the creditors obtained by the institution of such proceedings, I am of the opinion that a total fee of $1,000, being one-half as much as the amount allowed to the attorneys for the trustee, is a liberal allowance for said services, notwithstanding the affidavits filed in support of the application valuing the services at $2,000 the amount applied for. Accordingly, the trustee is directed to pay to said attorneys the sum of $500 in addition to the payment of $500 heretofore allowed and made.

 The application of the attorney for one of the large general creditors for a fee of $2,500 must be first considered as to the validity of the claim in its entirety rather than the size of the fee. There is no claim of employment by the trustee, nor is there any claim that the attorney in question represented in any way, in conjunction with other attorneys, the petitioning creditors. It is claimed that valuable services were rendered in successfully opposing the composition offer of 50% and in successfully opposing the allowance of a claim on the part of another creditor in the approximate amount of $25,000. It will be noticed that the attorneys for the petitioning creditors also claim credit for similar services. It appears well settled as a general rule that no fee can be allowed against the

bankrupt estate to the attorney for a creditor other than the petitioning creditors. Mechanics'-American National Bank v. Coleman, 8 Cir., 204 F. 24; Frank v. Dickey, 8 Cir., 139 F. 744; In re Baxter, C.C., 28 F. 452; In re Evans, D.C., 116 F. 909. The attorney's claim for services rendered in such cases is against the individual client. It has been specifically held by the Circuit Court of Appeals for this Circuit that services rendered in resisting a composition offer are no part of the administration of the bankrupt estate and no allowance should be made for such services. In re Kinnane Company's Estate, supra. See also In re Fashion Shop, Inc., D.C., 6 F.Supp. 533. This claimant refers us to no particular statutory authority authorizing the allowance in question. Section 104 of Title 11 U.S.C.A. authorizes one exception to the general rule by providing that "where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery" are to be paid. No claim is made by this attorney for services in recovering concealed assets or recovering property fraudulently transferred. Another possible exception to the general rule is that where the trustee declines to employ counsel to resist an unjust claim and counsel for a creditor intervenes and succeeds in defeating it such counsel is entitled to reasonable compensation as an expense of administration. In re Little River Lumber Co., D.C., 101 F. 558. Such an allowance would probably also be justified if counsel for the trustee refuses to take action upon request and thereupon counsel for an individual creditor successfully resists the allowance of a claim. Such a rule is probably a reasonable deduction from the decisions in In re Medina Quarry Co., supra, In re Roadarmour, supra, and In re Otto-Johnson Mercantile Co., supra, where it was held that no allowance was authorized if the trustee has not refused to act. Claimant's petition does not state that either the trustee or his counsel refused to take action after having been requested to do so, but does state as follows:

"That throughout all of said time after the appointment of a trustee and selection of counsel for him herein, the said trustee and his counsel neglected and failed to take any steps or do any act to prosecute the disallowance of the said claim, or to cause the said asserted lien upon the real estate to be discharged, and but for the aforesaid acts of your petitioners the said estate would have been forced to pay the said claim asserted as aforesaid."

This falls far short of having a situation where the trustee and his counsel refused to take action. It is presumed that this language was carefully chosen and that the facts did not support an allegation of a demand on the trustee and a refusal to act, but if the language was inadvertently used and counsel desires to amend his claim by alleging a demand and refusal further consideration can be given to this claim. It also appears from claimant's petition that the creditor Barnes "has heretofore paid and agreed to pay a substantial fee" to the attorney who represented him in this proceeding and that any fee allowed herein will be divided between Barnes and the attorney. Accordingly, this is in substance an effort to secure reimbursement to the creditor for fees paid and to be paid by him to his attorney under a previously existing employment. Under the authorities above referred to I am of the opinion that I have no authority under the Bankruptcy Act to make any allowance to the attorney for this individual creditor which would be a charge upon the assets of the bankrupt estate. Accordingly, this application is denied in its entirety.

■ There remains to be considered the ruling of the Referee in reducing a claim filed by The Butterick Company from its original amount of $1,493.26 to $163.25. The Butterick Company seeks a review of this ruling. The claim arises out of a contract dated March 19, 1937 and effective April 2, 1937 between The Butterick Company and the bankrupt by which the company shipped to the partnership a stock of Butterick patterns at a cost of $1,250. New patterns as issued by the company were to be shipped monthly to support this basic stock. The partnership agreed to promptly re-order patterns which it sold and agreed to pay on or before the 10th of the month succeeding the month of shipment for all goods purchased other than the basic stock. The $1,250 for the basic stock was to remain as a standing unpaid balance which the partnership agreed to pay on termination of business relations with interest at 5% per annum

payable semi-annually. The agreement was to be effective for a period of one year from date of acceptance and from term to term of the same period thereafter. Either party had the right to give written notice of cancellation within thirty days after the expiration of any term, in which event the agreement was to continue for only six months thereafter. The contract also provided "at regular termination of this agreement or within thirty days thereafter, provided we have complied with all its terms, we have the option of either paying the standing unpaid balance in cash, or of liquidating it by returning to your New York office sufficient live patterns at 100% of purchase prices." The partnership was adjudicated a bankrupt on October 11, 1937 and written notice of this was sent to the claimant as a creditor. At that time the partnership had sold patterns in the amount of $163.25 for which payment had not been made. After the store closed the manager packed the patterns for shipment and notified The Butterick Company by letter that the patterns were being returned to it. The Butterick Company answered that they would not accept the return of the patterns and insisted upon payment of the contract price. On February 2, 1938 the patterns were returned by the trustee to The Butterick Company in New York City. The Butterick Company contends that the contract was not terminated by giving the required notice during thirty days after expiration of the original term, and that accordingly there was no authority to return the patterns, such authority being limited to the termination of the agreement. In my opinion this is a very forced construction of the terms in question, and that the proper construction is that such notice of termination could be given at any time not exceeding thirty days after the expiration of any one year's term, and that the right to give such notice is not limited to the specific thirty days following the expiration of any term. The evident purpose of the contract was to enable The Butterick Company to have ample notice of termination rather than that the particular notice should be given between specified dates. Accordingly, I am of the opinion that the contract was properly terminated, and that the provision providing for the return of live patterns at 100% of their purchase price at the termination of the agreement could be taken advantage of by the trustee

in bankruptcy. This results in the claim of $1,493.26 being properly credited with the patterns returned leaving an unpaid balance of $163.25. The ruling of the Referee on this claim is therefore approved.