**In re INDEPENDENT DISTILLERS OF KENTUCKY.**

No. 12646.

District Court, W. D. Kentucky, at Louisville.

Sept. 11, 1940.

710

J. Smith Barlow, Jr., of Bardstown, Ky., for trustee.

Victor L. Kelley and Ernest Fulton, both of Bardstown, Ky., for petitioning creditors.

D. A. Sachs, Jr., and Frank A. Garlove, both of Louisville, Ky., for bankrupt.

Dodd & Dodd, of Louisville, Ky., for Abbott and Kurth Malting Co.

MILLER, District Judge.

This matter is before the court on separate petitions for review by claimants Leslie V. Abbott and Kurth Malting Company of the order of the referee in bankruptcy rejecting their claims against Independent Distillers of Kentucky, bankrupt, and on applications for allowances by the receiver-trustee and attorneys.

Claim of Leslie V. Abbott—No. 99.

Leslie V. Abbott claims a lien against a cooling plant installed by him in the distillery superior to the claims of certain general creditors. The referee rejected the claim as a secured one.

The claimant Abbott installed in the distillery at its request an Ingersoll-Rand cooling plant, which the claimant purchased from the Brandeis Machinery & Supply Company, in an independent transaction between the claimant and the Brandeis Company. This installation was pursuant to a written proposal dated April 10, 1936, from the distillery to Abbott. The installation was completed in June, 1936. Partial payments were made by the distillery from time to time, until on September 22, 1937, there was an unpaid balance of $2,283.75. On that date this balance was consolidated with other indebtedness to the claimant and the distillery executed its note to the claimant for $5,733.75, representing the total indebtedness. This note carried an endorsement providing for retention of title to the cooling plant by Abbott until the note was paid. No writing evidencing the contract for the cooling plant was recorded. The proof shows that only a few of the numerous creditors who have filed claims against the bankrupt estate extended credit to the bankrupt after June, 1936, without notice of Abbott's claim to the cooling plant. The referee sustained the objections of the trustee to Abbott's claim to the cooling plant free of claims of creditors, and allowed the claim of $5,733.75 as a general unsecured claim, which action is now before the court for review.

Whether or not claimant retained title to the cooling plant depends upon the contract entered into in April, 1936, and completed in June, 1936. The endorsement on the note of September 22, 1937, does not change that contract to the prejudice of intervening creditors, but it can be considered as evidence of the terms of the then existing contract. The court construes the contract of April, 1936, as an oral conditional sales contract. Such a contract must be recorded in order to be valid against certain creditors. Kentucky Statutes, Sections 496, 1908; Munz v. National Bond & Investment Co., 243 Ky. 293, 47 S.W.2d 1055; In re Selman's Incorporated, D.C., 58 F.2d 681. In order for a creditor to prevail over the conditional sales vendor who has not recorded his instrument, he must be either an antecedent creditor who at some time prior or to the recording of the mortgage has secured some equity in the property, or a subsequent creditor without notice of the vendor's claim. Mason & Moody v. Scruggs, 207 Ky. 66, 268 S.W. 833; In re Gibson, 6 Cir., 65 F.2d 921; National Bond & Investment Co. v. Jones, 6 Cir., 78 F.2d 601. The burden is on the creditor to prove that he comes within the necessary classification. Sears, Sheriff v. Cain, 242 Ky. 702, 47 S.W.2d 513; Calloway v. Howard, 247 Ky. 730, 736, 57 S.W. 2d 677.

Claimant contends that the application of the foregoing rules in a bankruptcy proceeding results in the trustee

prevailing over the claimant only with respect to such creditors as prove the necessary qualifications and that the claims of other creditors are inferior to claimant's lien against the cooling system. Sections 47, sub. a and 70, Bankruptcy Act; Sections 75, sub. a and 110, Title 11 U.S.C.A. Prior to the 1910 amendment to Section 47, sub. a, the Supreme Court held in York Manufacturing Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782, that the trustee derived his rights from the bankrupt only and that his status did not arise to the dignity of the status of creditors whom he likewise represented. Claimant contends that the 1910 amendment which vested the trustee with the rights and remedies of a creditor holding a lien by legal or equitable proceedings increased the status of the trustee only to the extent that he thereafter took the dignity of the individual status of each particular creditor with respect to that creditor's rights, and that it did not increase his status to the dignity of a lien creditor as to all creditors generally. Smith-Flynn Commission Co. v. Doyle, 8 Cir., 292 F. 465, 473; In re Stephens, D.C., 1 F.Supp. 681. This construction of the amendment had some early support from the courts, who at first failed to give full effect to the intention of Congress. It was discussed and rejected by the Circuit Court of Appeals for the 8th Circuit in Albert Pick & Co. v. Wilson, 19 F.2d 18. But irrespective of the proper construction to be given to the 1910 amendment as applicable when only one particular claim is under consideration, it appears to have been settled that in cases where the trustee has an undisputed right to avoid the lien by reason of the status of one particular creditor it can be avoided by the trustee acting for that creditor with resulting benefit to all creditors, regardless of the status of the other creditors. The action of the trustee is for the benefit of the estate, even though all creditors benefit by the avoidance. Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198; Friedman v. Sterling Refrigerator Co., 4 Cir., 104 F.2d 837. The present record discloses the existence of several creditors who extended credit to the bankrupt without notice of claimant's interest in the property. The trustee's objection to the claim as filed is sustained, and its allowance by the referee as a general unsecured claim is approved.

The referee's order of August 5, 1939, with respect to this claim is affirmed.

Claim of the Kurth Malting Company— No. 110.

The Kurth Malting Company filed claim against the bankrupt estate for $3,202.76 as damages caused by alleged breach of contract on the part of the bankrupt. The referee rejected the claim.

By contract of September 22, 1936, the Kurth Malting Company sold to Independent Distillers 20,000 bushels of distiller's bulk malt at $1.59 per bushel for shipment in equal monthly installments between November 26, 1936, and July 1, 1937. The contract provided that the buyer order the malt shipped, and the seller ship the same in carload quantities. On July 1, 1937, there remained a balance of 7,279 bushels to be ordered out and delivered to the Independent Distillers. With the exception of a small shipment on July 15, 1937, no shipping orders were given by the distillery, and no shipments were made or tendered by the malting company. The market price of malt remained $1.59 per bushel from July 1, 1937, to August 12, 1937, but thereafter declined to $1.15 per bushel on April 27, 1938. In April, 1938, the Malting Company received notice of the bankruptcy of the Independent Distillers, considered the contract terminated as of that date and filed this claim for the difference between the contract price and the market price of the undelivered 7,279 bushels. The trustee contends that the contract was breached on July 1, 1937, when the distillery failed to give shipping orders for the balance of the contract, at which time there was no damage to the seller because the market price still equalled the contract price. The referee sustained this contention and disallowed the claim.

 It is well settled that where the buyer of goods breaches his contract of purchase by refusing to accept and pay for the goods the seller is entitled to damages in the amount of the difference between the contract price and the then current market price. Kentucky Statutes, § 2651b-64. The real question at issue in this case is when was the contract breached. No right of action in any amount accrued to the seller until that time. The fact that July 1, 1937, arrived and passed without delivery being made of the balance of the contract does no.

necessarily mean that the contract was breached at·that time. Where an agreement is absolute and unconditional the general rule is that no demand for performance is necessary. Failure to perform at the stipulated time is of itself a breach of the contract. However, if the contract calls for concurrent acts by the contracting parties, or where performance has been delayed by mutual consent, demand or tender on. the part of one party is necessary before the other party can be put in default. Johnston v. Benjamin, 219 Ky. 169, 292 S.W. 801. See 17 Corpus Juris Secundum, Contracts, §§ 478 and 480. In the present case the contract called for concurrent acts by the contracting parties, viz., the giving of shipping instructions by the purchaser and the compliance with those instructions by the seller. The purchaser did not give any shipping instructions; the seller did not demand any. The seller did not tender the delivery of the balance of the contract; the purchaser did not refuse to take it. The evidence sustains the contention that by mutual consent of the contracting parties the time of performance was continued to a later date. The seller could have at any time demanded that the buyer receive and pay for the undelivered portion of the contract·and the contract would have been breached if such demand had been refused. The purchaser could have notified the seller at any time that he would not accept the remainder of the malt called for by the contract which would have been a breach of the contract on his part and fixed the damages as of that date. Such a breach, occurring after the date of performance, would have had to be accepted by the seller. This is different from the rule which applies when the renunciation of the contract comes before the date of performance, in which cases the seller does not have to accept the anticipatory breach. Louisville Packing Co. v. Crain, 141 Ky. 379, 132 S.W. 575. In the present case the failure of the seller to demand performance and the failure of the buyer to renounce the contract obligation, even though after the time of performance stipulated by the contract, left the contract a valid and continuing one until it was thereafter breached by some action on either side. The adjudication in bankruptcy was in legal effect the renunciation of the contract by the buyer.

Paragraph 10 of the contract, relied upon by the trustee, does not have the effect contended for by the trustee. It provides that failure of the buyer to give shipping orders as required by the contract shall entitle the seller to charge the buyer with certain carrying charges for such period as the seller may elect to carry the malt for the account of the buyer, and that the seller shall have the privilege of cancelling the contract as to the undelivered portion of the malt selling the same for the account of the buyer. This does not provide that failure of the buyer to give shipping orders shall constitute a breach of the contract; on the contrary it gives to the seller the election to either continue the contract in effect and to charge carrying charges, or to cancel the contract. There is no substantial evidence to the effect that the seller exercised the option to cancel the contract. The failure to exercise such an option does not have the result of cancelling the contract anyhow.

Claim No. 110 of the Kurth. Malting Company for $3,202.76 as damages for breach of the contract in question is allowed. Referee's order of August 5, 1939, rejecting such claim in its entirety is overruled.

### Allowance of Fees.

John E. Newman, the receiver and trustee, has applied for an allowance of $3,229.48 plus expenses in the amount of $700, making a total of $3,929.48. J. Smith Barlow, Jr., attorney for the trustee, .has applied for a fee of $10,000 and expenses in the sum of $284.13, making a total of $10,284.13. Victor L. Kelly and Ernest Fulton, attorneys for the petitioning creditors, have applied for a fee of $2,500, D. A. Sachs, Jr., and Frank A. Garlove, attorneys for the bankrupt, have applied for a fee of $3,500.

An involuntary petition in bankruptcy was filed against the corporation on February 19, 1938. Answer and plea for reorganization was filed March 1, 1938. Upon failure to reorganize, the corporation was adjudicated. a bankrupt on June 21, 1938. The services rendered by the various applicants covered a period of approximately two years, from February, 1938, to .February, 1940. The total amount of money which came into the hands of the trustee for distribution was $123,914.10. The total amount of lien claims amount to $85,051.58. Unsecured

claims total approximately $85,000. After payment of lien claims, referee's commission and certain expenses of administration there remains in the hands of the referee approximately $26,000, which is available, for the above allowances and for dividends to creditors. The allowances as applied for total $20,213.61. Unless this total is modified, general creditors wil receive very little.

██ ██ The trustee received in cash $123,914.10 from the proceeds of the sale of the distillery and cash in bank at the time of his appointment. His commission is governed by the provisions of Title 11, U.S.C.A., Section 76, Subsection c(1). On this sum it amounts to $1,379.14. During the administration of the bankrupt estate there were large withdrawals of whisky which involved the payment of a large amount of taxes. The receiver-trustee collected such taxes in the amount of $185,034.87, which he paid to the Collector of Internal Revenue. He asks for a commission of 1% on this amount of money collected and disbursed by him, although it was not disbursed to creditors. No objection has been filed to his application. At one time the statute restricted commissions to money disbursed to creditors, but as presently amended this restriction seems to have been removed. It now provides that the trustee is entitled to his commission "upon all moneys disbursed or turned over by them to any persons, including lienholders." The terms of the present statute are broad enough to include the taxes collected and disbursed by the trustee, although such disbursements were not made to general creditors. See In re Howard, D.C., 207 F. 402. The total commission applied for is reasonable in amount considering the period of time during which the receiver-trustee acted. Trustee's application for a total allowance of $3,929.48 which includes expenses is approved.

██ ██ The attorneys for the petitioning creditors have submitted a detailed statement of the services rendered by them beginning January 10, 1938, and running through November 10, 1938. It comprises a total of 60 hours. Objection was filed by the trustee to this application. It shows that 12 of these hours were consumed in various conferences between the attorneys for the petitioning creditors and the corporation with reference to the financial status of the corporation, and the amount of various claims against the corporation, before it was ever decided to file a petition in bankruptcy. It further shows that 20 hours of service was given after the adjudication in bankruptcy, which consisted generally of examining and resisting claims against the estate, attending creditors' meetings and conferring on possible sales of the distillery to interested purchasers. There is no authority for the allowance of a fee out of the bankrupt estate for such services. It is well settled as a general rule that the fee of the attorney for the petitioning creditors is restricted to services in preparing the petition and prosecuting it to adjudication of bankruptcy. Calhoun v. Stratton, 6 Cir., 61 F.2d 302. In re Consolidated Factors Corp., 2 Cir., 59 F. 2d 193. In re Eureka Upholstering Co., Inc., 2 Cir., 48 F.2d 95. See, also, In re Kinnane Company's Estate, 6 Cir., 242 F. 769; In re Roadarmour, 6 Cir., 177 F. 379; In re J. A. Rudy & Sons, D.C., W. D. of Ky., 30 F.Supp. 8. It accordingly appears that most of the services rendered and for which compensation is asked are not chargeable against the bankrupt estate but should be charged by the attorneys to the creditors whom they individually represent. For the other services rendered which are properly chargeable against the estate the court makes an allowance of $750.

██ The attorneys for the bankrupt have filed with their application for an allowance of $3,500 a detailed statement of the services rendered by them which comprises approximately 118 hours. Objection was filed by the trustee to this application. No reason is shown why it was necessary for the bankrupt to employ two attorneys from different law offices to so represent him in these proceedings and accordingly duplication of work in conferences and in court attendance can not be considered. Giving consideration to the beneficial nature of the services performed by these attorneys on the one hand, and to the limited amount of time devoted to the work on the other, the allowance to them jointly is fixed at $1,500.

██ ██ The attorney for the trustee has submitted a detailed statement of the services rendered by him in support of his application for an allowance of $10,-000. No objection was filed to this application. It comprises approximately 660 hours divided over 152 different days on

which services were performed. Over the period of two years during which these services were performed there was accordingly an average of less than seven days a month on which services were performed, and an average of a little less than five hours per day on each of the 152 days on which the services were rendered. The attorney for the trustee accordingly devoted approximately one-fourth of his time over the two-year period to the matters involved in the administration of this bankruptcy estate. The results obtained in the rejection of approximately $65,000 of general claims against the estate, and the allowance of some $13,000 preferred claims as general claims only, are entitled to consideration. Giving consideration also to the amount which will be left available for dividends to creditors, this allowance is fixed at $7,500. His expense account includes 48 trips from Bardstown, Kentucky, to Louisville, Kentucky, (about 40 miles) and return, made in his personally-owned automobile, for which he asks $5 per trip, in addition to lunches and parking expenses in Louisville. In the court's opinion the charge of $5 per trip is sufficient to include all expenses. The expense claim is approved in the amount of $240 plus $8.13 for telegrams and long-distance calls.

Counsel will prepare the proper orders for entry in conformance with foregoing rulings.